UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80456-CIV-KAM

PALM BEACH DIVISION

NORMAN HIRSCH, MATTHEW DWYER,
and RALPH WILLARD, individually and on
behalf of all others similarly situated,

               Plaintiffs,

vs.

JUPITER GOLF CLUB, LLC, a Delaware
LLC d/b/a TRUMP NATIONAL GOLF
CLUB JUPITER and RBF, LLC, d/b/a THE
RITZ-CARLTON GOLF CLUB & SPA
JUPITER,

               Defendants.

_____

## DEFENDANT, RBF, LLC'S, MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, RBF, LLC, d/b/a THE RITZ-CARLTON GOLF CLUB & SPA JUPITER

("RBF"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiffs'

Amended Putative Class Action Complaint (the "Amended Complaint") [Doc. No. 23] for failure

to state a claim upon which relief can be granted and in support thereof submits the following

Memorandum of Law.

## INTRODUCTION

In this action, Plaintiffs seek to recover membership deposits ("Membership Deposits")

they paid to purchase membership interests in The Ritz-Carlton Golf Club & Spa (the "Club"),

which gave them access to the golf course, club house and spa formerly owned by RBF (the

"Club Facilities"). Plaintiffs allege that Jupiter Golf Club, LLC d/b/a Trump National Golf Club

Jupiter ("Trump" or "JGC") purchased the Club Facilities from RBF in December of 2012 and that RBF and Trump have breached the membership agreements between Plaintiffs and RBF (the "Membership Agreements") by failing to refund their Membership Deposits.

However, the documents attached to and referenced in the Amended Complaint—namely, the Membership Agreements, RBF Membership Plan, RBF Membership Plan Rules and Regulations, and Trump Membership Plan Legacy Addendum (collectively, the "Membership Documents"), and the Purchase and Sale Agreement between RBF and Trump (the "PSA")—contradict and undermine Plaintiffs' claims and warrant dismissal of the Amended Complaint as to RBF. Plaintiffs' own allegations—coupled with the clear terms of the Membership Documents and the PSA—establish (i) that if RBF sells the Club Facilities to a buyer that assumes liability for repayment of membership deposits, RBF is released from liability for those claims and (ii) that Trump assumed liability for the refund of all of the outstanding Membership Deposits when it purchased the Club Facilities from RBF.  Consequently, Plaintiffs' recourse is solely against Trump, not RBF.

Moreover, the exhibits attached to the Amended Complaint demonstrate that none of the actions taken by Trump have triggered any refund obligations to which Plaintiffs might be entitled under their Membership Agreements.  As this Court recently observed in another case, "[t]his is not a case where the Plaintiffs have pleaded too little, but where they have pleaded too much and have refuted their own allegations by setting forth the evidence relied on to sustain them." *Embrey v. First Franklin Fin. Corp.*, Case No. 12-61233-Civ, 2013 WL 1289401, at *3 (S.D. Fla. Mar. 12, 2013).

The Amended Complaint seeks to rectify deficiencies in Plaintiffs' original complaint identified by RBF in its Motion to Dismiss filed on July 8, 2013. Plaintiffs have failed to rectify the deficiencies, and accordingly the Amended Complaint must be dismissed.

## LEGAL STANDARD

To meet federal pleading standards, a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

A court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although the plaintiff's allegations must be taken as true, a reviewing court must also consider any exhibits attached to the complaint, which are considered part of the pleadings "for all purposes." *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."). "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Cucinotta v. CVS Pharmacy, Inc.*, Case No. 8:12-cv-1194-T, 2012 WL 5467524, at *4 (M.D. Fla. Nov. 9, 2012) (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812 (5th Cir. 1940)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). A document is considered part of the pleadings for purposes of a motion to dismiss, even if not attached to the complaint, "if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

## ARGUMENT

I.     **Trump Assumed Liability For Refund Of Membership Deposits And Plaintiffs Have No Claim Against RBF.**

All counts of the Amended Complaint must be dismissed with respect to RBF because, as Plaintiffs allege, Trump fully assumed RBF's obligations relating to Plaintiffs' Membership Agreements—including the refund obligations relating to Plaintiffs' Membership Deposits. Plaintiffs have no claim against RBF. Any recovery on their claims must come solely from Trump.

   A.     **The PSA Clearly Provides that Trump Assumed Liability for the Membership Deposit Refund Obligations.**

Throughout the Amended Complaint, Plaintiffs allege that RBF retains some liability for the Membership Deposit refunds even after selling the Club to Trump. [Doc. No. 23 at ¶¶7, 100, 101, 111 and 112.]. These allegations, however, are directly contradicted by the documents attached to or referenced in the Amended Complaint: the Membership Documents and the PSA.

Plaintiffs' Membership Agreements—attached to the Amended Complaint as Exhibits "A" through "C"—expressly provide that in the event the Club Facilities are sold, and the buyer assumes liability for Membership Deposit obligations, members may look *only* to the buyer for any refund of their membership deposits:

> In the event that the Club Facilities are sold and the buyer assumes liability for the repayment of the membership deposit, *the undersigned shall look solely to the new owner for repayment of the membership deposit and the seller of the Club Facilities shall be released from all liability for the repayment thereof.*

[Doc. No. 23-2, p. 6; Doc. No. 23-3, p. 6.] (Emphasis added).[1]

---

[1] The Membership Agreement of Plaintiff Matthew Dwyer—attached as Exhibit "A" to the Complaint—contains a slightly different version of this sentence, and reads: "In the event that the Club Facilities are sold and the buyer assumes liability for the repayment of membership deposit and the seller of the Club Facilities shall be released from all liability for the repayment

The allegations of the Amended Complaint, the Membership Documents, and the PSA clearly demonstrate that: 1) RBF sold the Club Facilities to Trump, and 2) Trump assumed liability for the outstanding Membership Deposit refund liabilities.   Consequently, under the plain terms of the Membership Agreements, RBF is released from all liability, and Plaintiffs may **only** look to Trump to satisfy any refund obligations to which they may be entitled.

As Plaintiffs allege, RBF sold the Club Facilities to Trump in or about December 2012. [Doc. No. 23 at ¶39.]  The agreement between RBF and Trump was memorialized in the PSA, which Plaintiffs reference extensively and even quote in the Amended Complaint. *Id.* at ¶¶3, 39, 40, 55, 56, 58, 61, 115, 116.[2]  The PSA clearly provides that Trump would assume ownership of the Club Facilities, subject to all monetary and non-monetary obligations relating to the Membership Agreements, Membership Notes, and Membership Plan, including the membership deposit refund obligations.  Section 8.9(a) of the PSA expressly states that "Purchaser [Trump] will assume the right, title, interest and obligations of Seller [RBF] in the Delivered Club

---

thereof."  [Doc. No. 23-1, p. 6.]  Notwithstanding the superfluous conjunction "and," the operative words of the sentence clearly provide that RBF is released from liability if a buyer of the Club Facilities assumes RBF's liability in this regard.

[2] A copy of the PSA is attached hereto as Exhibit "1" and incorporated herein by reference. Although not attached to the Amended Complaint, the Court can consider the PSA in considering RBF's Motion to Dismiss.  While courts may not generally go outside the four corners of a complaint when evaluating a motion to dismiss, a district court "may consider a document attached to a motion to dismiss if the document is central to the plaintiff's claim and undisputed," meaning that "the authenticity of the document is not challenged." *Wordley v. San Miguel*, 915 F. Supp. 2d 1312, 1314 n.2 (S.D. Fla. 2013) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). The PSA meets both prongs of this test.  Throughout the Amended Complaint, Plaintiffs specifically reference the PSA, and their breach-of-contract claim against RBF hinges on the allegation that the express terms of the PSA capped Trump's assumption of membership deposit refund obligations at $50,000,000.  [Doc. No. 23 at ¶¶3, 39, 40, 55, 56, 58, 61, 115, 116.]  Because these claims can only be evaluated by looking to the PSA, the PSA is clearly "central" to Plaintiffs' claims. *See, e.g., Balmert v. Pulte Home Corp.*, 445 Fed.  Appx. 256 (11th Cir. Oct. 26, 2011) (finding purchase agreements not attached to complaint were properly considered on motion to dismiss where "it would be impossible for the District Court" to weigh the merits of a "crucial issue" in the case without considering the purchase agreements).

Documents[3] *including the Refund Obligations*." Ex. 1, § 8.9(a), Bates No. R000000028-29 (emphasis added). "Refund Obligations" are defined in Section 1.61 of the PSA as "the obligation to repay each Club Member that is a party to a Membership Agreement the refundable member deposit, if any, to which each, as applicable, is or may become entitled pursuant to his or her Membership Agreement and Membership Note . . . ." Ex. 1, §1.61, R00000009.  These unambiguous provisions make clear that Trump assumed the Membership Deposit refund obligations. Therefore, the PSA undermines Plaintiffs' conclusory allegations that RBF retains *any* liability for the membership deposit refund obligations. *See Griffin Indus.,* 496 F.3d at 1206.

RBF and Plaintiffs contemplated this situation when they executed the Membership Agreements. In the event RBF sold the Club to a new owner, and the new owner assumed the refund obligations, Plaintiffs agreed that RBF would be released from all liability.  To allow Plaintiffs to seek a refund of their Membership Deposits from RBF in light of the sale of the Club Facilities to Trump would contradict the plain, unambiguous terms of the Membership Agreements.  The Court cannot permit such a claim.  *See, e.g., Brooks v. Green,* 993 So. 2d 58, 61 (Fla.1st DCA 2008) ("A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract.").   Consequently, under the terms of the Membership Agreements, Plaintiffs must "look solely to the new owner [Trump] for repayment" of their membership deposits. [Doc. No. 23-1, p. 6; Doc. No. 23-2, p. 6; Doc. No. 23-3, p. 6.]

---

[3] The "Club Documents" and "Delivered Club Documents" are defined as the "Membership Agreements, the Membership Notes, the [RBF] Membership Plan and rules and regulations of the Club" that were provided to Trump prior to the effective date of the PSA. Ex. 1, §§1.14, 1.23, 8.9(e), R00000004, 5, 29-30.

### B.    Plaintiffs' Other Attempts to Keep RBF in this Case Are Without Merit.

Perhaps recognizing that they have no claim against RBF directly for the refund of their Membership Deposits, Plaintiffs allege three alternative theories in a desperate attempt to support actions for declaratory relief and breach of contract against RBF.

### 1.    *Trump Expressly Assumed the Obligations of the Membership Agreements "In Their Entirety"*

Plaintiffs first allege that RBF "failed to convey title to the club facilities subject to the full terms and provisions of the existing RBF Membership Plan." [Doc. No. 23 at ¶114.] Again, the PSA directly contradicts this conclusory allegation and expressly provides that Trump took ownership of the Club Facilities subject to *all* of the terms and provisions of the RBF Membership Plan. As mentioned above, Section 8.9(a) of the PSA provides: "Purchaser [Trump] will assume the right, title, interest and obligations of Seller [RBF] in the Delivered Club Documents, *including the Refund Obligations*." Ex. 1, §8.9(a), R000000028-29 (emphasis added). Additionally, Section 8.9(e) of the PSA reiterates that "the Delivered Club Documents are being assumed by Purchaser [Trump] *in their entirety*, so as to specifically also include the assumption of non-financial obligations contained therein." Ex. 1, §8.9(e), R000000030 (emphasis added). Again, the PSA squarely contradicts and governs Plaintiffs' conclusory allegations. *Griffin Indus.*, 496 F.3d at 1206.

### 2.    *Trump's Assumption of the Refund Obligations Greatly Exceeds Plaintiffs' Potential Claims.*

Plaintiffs also allege that Section 8.9 of the PSA "caps" Trump's refund obligation at $50,000,000, and that such a limitation of liability constitutes a breach of the Membership Agreements on RBF's part. [Doc. No. 23 at ¶115.] This argument is a red herring because even assuming it had any merit as a matter of law, it has no basis in fact.  The PSA indicates that the

outstanding Membership Deposit refund obligations at the time of the sale to Trump were well below $50,000,000.   Section 8.9(a) of the PSA provides that Trump assumed Membership Deposit refund obligations up to a total of $50,000,000. Ex. 1, §8.9(a), R000000029.   The potential refund obligations assumed by Trump were set forth in Schedule T to the PSA—also known as the "Member Matrix." Ex. 1, Schedule T, R000000322-332.   Schedule T lists all Club members at the time of the sale to Trump and provides financial information relating to their accounts, including any refundable deposits.[4]

The last page of Schedule T reflects the maximum outstanding liability for all membership deposit refund obligations: **$47,403,100**. Ex. 1, Schedule T, R000000332.   This number is, obviously, well below the $50,000,000 liability assumed by Trump. The plain terms of the PSA, therefore, establish that at the time of the sale from RBF to Trump, Trump assumed liability for *the full amount* of the outstanding Membership Deposit refund obligations. Contrary to Plaintiffs' assertion, the $50,000,000 figure mentioned in the PSA did not represent a "cap" on liability as the Membership Deposit refund obligations were well below that amount. Plaintiffs can—and must—look solely to Trump, who has explicitly agreed to assume liability in an amount that would be sufficient to satisfy any potential refund to which Plaintiffs might be entitled.

> 3.   *Plaintiffs Cannot Establish Breach of A Right To Receive a Refund in Excess of Their Membership Deposit.*

Lastly, Plaintiffs allege that RBF breached the Membership Agreements because Section 8.9's limitation of Trump's liability "eliminates the Club members' right to receive any increase in the amount of the membership deposit." [Doc. No. 23 at ¶116.] Plaintiffs base their claim on

---

[4] To protect the identity of individual members, Schedule T was redacted to remove the names of individual members and, instead, replaced names with identification numbers.

Section III of the Membership Agreements and a similar provision in the RBF Membership Plan, which provides that if a member resigns his or her membership prior to thirty (30) years, and the membership is re-issued to a new member, the resigned member is entitled to receive a refund in an amount that is the greater of "(i) the amount of the membership deposit previously paid by the resigning member, or (ii) seventy percent (70%) of the then-current membership deposit charged by the Club to the new members acquiring the membership" (the "Increased Refund Provision"). [Doc. Nos. 23-1, p. 5; 23-4, p. 15.]  Plaintiffs' attempt to allege a breach-of-contract claim based on this provision fails for several reasons.

As an initial matter, Section III is irrelevant here because Plaintiffs' claims do **not** rest on the notion that Plaintiffs are entitled to refunds because they resigned their membership and those memberships have been re-issued, as described in Section III.   Rather, Plaintiff's claims are rooted in the allegation that Trump's "***termination of membership categories*** triggered JCG's duty and RBF's duty to refund deposits within 30 days." [Doc. No. 23 at ¶71 (emphasis added); *see also id.* at ¶111.] Refunds of Membership Deposits for "termination of membership categories" are governed by a different refund provision—Section IV of the Membership Agreements—which provides that upon termination of a membership category, the affected members are entitled "to a refund *of the membership deposit paid* within 30 days." [Doc. No. 23-1, p. 6; 23-2, pp. 5-6; Doc. No. 23-3, p. 6.] (emphasis added). Thus, Plaintiffs were *never* entitled to receive a refund for an amount greater than their original deposit amount in the event of a termination of their category of membership.

Notwithstanding the irrelevance of the Increased Refund Provision, nowhere in the PSA did RBF and Trump "eliminate" any member's ability to receive refunds in excess of their original deposits. Indeed, as mentioned above, the PSA makes clear that Trump assumed the

obligations in the Membership Documents "*in their entirety*," which, necessarily, includes the Increased Refund Provision. Ex. 1, §8.9(e), R000000030.

Additionally, any limitation on the ability to collect an increased membership deposit refund could not have constituted a breach of the Membership Agreements because that possibility was not a vested contract right. Section III of the Membership Agreements does **not** provide that Plaintiffs *will* receive a refund in an amount greater than the deposit they paid. It merely provides that resigned members *can* receive a greater amount, conditioned upon the occurrence of specific events—namely, the Club Owner's increasing Membership Deposits by a given amount over-and-above the deposit originally paid by the member. Such an increase was never certain to happen, and because nothing in the Membership Documents obligates the Club Owner to raise the cost of Membership Deposits, the failure to cause this condition to occur could not constitute a breach of contract by RBF or Trump. *See* Restatement (Second) of Contracts § 225(3) ("Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur."). Thus at most, Plaintiffs had a *contingent* right, which, under Florida law, is differentiated from a vested right giving rise to a cause of action. *See, e.g., R.A.M. of South Fla., Inc. v. WCI Communities, Inc.*, 869 So. 2d 1210, 1218 (Fla. 2d DCA 2004) ("[Contract rights] are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.") (quoting *Pearsall v. Great N. Ry.*, 161 U.S. 646 (1896)).  Because Plaintiffs do not allege that the condition precedent to receiving a refund greater than their original deposit amount—that the Club Owner has a contractual obligation to increase the cost of Membership Deposits—Plaintiffs do not have a cause of action against RBF for the failure to increase the cost of Club Memberships.

Finally, Plaintiffs' argument regarding Section III ignores the reality that unless, after the acquisition of the Club, Trump increased the membership deposit requirement for new memberships, the liability for all membership deposit refund obligations cannot exceed $50,000,000. The Increased Refund Provision allows a resigned member to receive a refund of "seventy percent (70%) of the then-current membership deposit charged by the Club to the new members acquiring the membership" only if RBF or Trump increased the cost of membership deposits. The Amended Complaint is devoid of any allegation that such an increase has occurred which resulted in the membership deposit refund obligation exceeding $50,000,000.

## II.     The Exhibits to the Amended Complaint Contradict Plaintiffs' Allegations That Trump Has Effectively Terminated All Existing Categories of Membership, Wrongfully Denied Plaintiffs Access to Club Facilities, or Wrongfully Collected or Retained Monies from Plaintiffs.

Plaintiffs' own allegations and exhibits undermine any notion that RBF has any liability for Membership Deposit refunds or for any actions relating to Plaintiffs' right to use the Club Facilities. Plaintiffs' exhibits also disprove their own allegations regarding Trump's actions. At their core, Plaintiffs' claims rest on three key allegations:

1)  Trump has "effectively terminated all existing categories of membership," thereby triggering the refund obligations found in Plaintiffs' Membership Agreements [Doc. No. 23 at ¶¶51, 52, 53, 65, 111, 112];

2)  Trump has wrongfully denied Plaintiffs access to Club Facilities [*Id.* at ¶¶72, 77, 78]; and

3)  Trump and RBF have wrongfully continued to collect dues and payments from Plaintiffs. [*Id.* at ¶¶70, 73, 123, 124.]

However, the exhibits attached to the Amended Complaint demonstrate that Trump has <u>not</u> "terminated all existing categories of membership" and, thus, Plaintiffs are not entitled to a refund of their Membership Deposits because of a termination. Moreover, the Membership Documents demonstrate that there would be nothing wrongful about Trump's actions in denying

Plaintiffs access to Club Facilities or collecting dues and payments from Plaintiffs, because members who resign their memberships have *no* entitlement to use Club Facilities but *are* obligated to continue paying dues and other payments until their membership is re-issued. Finally the PSA clearly demonstrates that Trump now operates the Club, and that payments from Plaintiffs are received by Trump and not RBF.

A.   Trump Has Not Terminated All of the Existing Categories of Membership.

Plaintiffs' Membership Agreements contain substantially identical provisions stating that members are entitled to a refund of their Membership Deposits upon certain occurrences. [Doc. No. 23-1, p. 6; Doc. No. 23-2, pp. 5-6; Doc. No. 23-3, p. 6.]  Plaintiffs allege that Trump—by virtue of a letter from Donald J. Trump, dated December 17, 2012 (the "Trump Letter") and the Trump Legacy Addendum—"effectively terminated memberships, recalled memberships and terminated all of the existing categories of membership and replaced them with entirely new categories of membership," which "triggered Trump's duty and RBF's duty to refund deposits within 30 days." *Id.* at ¶71.

In reality, Trump has not "terminated all of the existing categories of membership," as the exhibits attached to the Amended Complaint clearly show.  The Legacy Addendum recognizes that "some of the memberships in the Prior Club did include refundable membership" [Doc. No. 1-7, pp. 4-5] and explicitly indicates that "Club Owner [Trump] will honor certain of those memberships at the Club." *Id.*

Plaintiffs quote a portion of the Legacy Addendum, which states that "none of the memberships in the Club issued by the Club Owner [JGC] include . . . refundable membership deposits.  Therefore, a Refundable Membership will never be reissued." [Doc. No. 23 at ¶51.] (Emphasis in Amended Complaint).  Plaintiffs' selective quotation of the Legacy Addendum is misleading.  Indeed, the Legacy Addendum provides that members who previously held a

refundable membership before the sale of the Club Facilities by RBF to Trump—referred to as "Refundable Members" in the Legacy Addendum—are still able to obtain a refund of their Membership Deposit. [Doc No. 23-7, p. 5.]

The Legacy Addendum spells out very clearly how and when refunds of Membership Deposits will be made. Under Trump's ownership, although Refundable Memberships are not being "re-issued" by Trump, the Legacy Addendum provides that "for purposes of determining when a Refundable Membership is entitled to receive a refund of his or her membership deposit" a resigned Refundable Membership is placed on a waiting list and is **deemed** to be reissued— thereby triggering a refund of the Membership Deposit—using the following procedure:

> 1.      As long as the Club has a previously unissued membership or resigned Non-Refundable Membership available for sale in the resigned Refundable Member's category of membership . . . every fifth (5th) membership issued in that category will be deemed a reissuance of a resigned Refundable Membership from the waiting list, or
>
> 2.      If the Club does not have an unissued membership or resigned Non-Refundable Memberships available for sale in the resigned member's category of membership, then . . . each membership issued in that category will be deemed to be the reissuance of a resigned Refundable membership.

[Doc. No. 23-7, p. 6.]

The Legacy Addendum does not "terminate" the refundable memberships. Instead, it expressly provides a procedure by which individuals who resign their refundable membership can receive a return of their Membership Deposit from Trump. The changes in the refund nomenclature constitute, at most, a legitimate exercise of the discretion afforded the Club Owner by the Membership Agreements to "modify the Membership Plan and the Rules and Regulations." *See, e.g.*, Doc. No. 23-1, p. 6.

Under the terms of the Legacy Addendum, Plaintiffs' Refundable Memberships remain on the waiting list until they reach the top of the list and are deemed to be reissued under one of

the above-referenced scenarios. The Amended Complaint contains no allegation that Plaintiffs'
resigned memberships have reached the top of the resignation list and should have been reissued
or deemed to have been reissued. If those events occur and Plaintiffs *still* do not receive a refund
of their Membership Deposit, then Plaintiffs might have a claim against Trump for violating its
refund obligations. At this point, however, the Amended Complaint does not allege any facts
that would entitle Plaintiffs to a refund of their Membership Deposits. Plaintiffs' claims that
their deposit refunds have been wrongfully withheld are premature, speculative, and unripe for
adjudication at this time. *See, e.g., Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001)
(discussing the doctrine of ripeness and noting that "claims are less likely to be considered 'fit'
for adjudication when they venture beyond purely legal issues or when they require speculation
about contingent future events") (internal citations and quotation marks omitted).

> B.    Plaintiffs Have No Claim Against Either RBF or Trump for Refusing to Allow
> Them Access to Club Facilities.

Plaintiffs cannot plausibly maintain that either RBF or Trump has wrongfully denied
them access to Club Facilities. RBF cannot have wrongfully denied Plaintiffs access to Club
Facilities because RBF no longer controls the Club and is not in a position to control anyone's
access to the Club. Section 8.9(a) of the PSA—which Plaintiffs repeatedly reference in the
Amended Complaint—plainly states that "Seller [RBF] will no longer be operating the Club
post-Closing and therefore ***will no longer be responsible for ensuring that Club Members are
afforded the privilege to use the golf course or other facilities*** in accordance with the Delivered
Club Documents during the post-Closing period." Ex. 1, §8.9(a), R000000029. Plaintiffs also
allege that "[s]ince ***January 1, 2013***, JGC has denied Plaintiffs and Class Members access to any
club facilities." *Id.* at ¶72 (emphasis added). RBF was in no position to grant or deny Plaintiffs

access to Club Facilities during the time periods relevant to the Amended Complaint. Thus, Plaintiffs have no claim against RBF for denying them access to Club Facilities.

Nor do Plaintiffs have any claim against Trump for denying them access to Club Facilities because Plaintiffs have no right to use the Club Facilities following resignation of their memberships. Plaintiffs allege that the RBF Membership Agreements and RBF Membership Plan allow Plaintiffs "to have continued access and use of Club Facilities following their placement on a resignation list" [Doc. No. 23 at ¶74] and that Trump "had a duty . . . to allow dues paying members on the resignation list, including Plaintiffs and Class Members, continued access and use of Club Facilities." *Id.* at ¶77. Plaintiffs also allege that "Trump has violated the terms and conditions of the subject RBF Membership Agreements by revoking Plaintiffs' and Class Members' license to use Club Facilities." *Id.* at ¶78.

Plaintiffs, however, fail to cite any specific "terms or conditions" of the Membership Documents providing that individuals who resign their memberships have any right to continue using Club Facilities. This is with good reason. There are no such terms or conditions in the Membership Documents. Plaintiffs' general and conclusory allegations are, once again, contradicted by the clear terms of the Membership Documents. The Membership Documents do not provide that members who resign their memberships are entitled to use Club Facilities.

The Membership Agreements provide that "membership in the Club permits the member to use the Club Facilities . . . in accordance with the Membership Plan and Rules and Regulations." [*See, e.g.*, Doc. No. 23-1, p. 6.] The Membership Plan Rules and Regulations provide for resignation of memberships under the heading "TRANSFER OF MEMBERSHIP." [Doc. No. 23-4, p. 16.] That section states that "[a] member may transfer his or her membership only to the Club" and that a member desiring to resign his or her membership must give written

notice to the Club, at which point "[t]he resigned membership will be placed on a waiting list" until re-issued to a new member. *Id.*

Under a plain reading of the Membership Plan Rules and Regulations, a member who "resigns" his or her membership transfers that membership to the Club—along with the right to use Club Facilities. There is nothing in the Membership Documents providing for continued use of Club Facilities by former members who are on the resignation list. This understanding also comports with the plain meaning of the word "resign," which is defined as "2: to give up deliberately; *esp.:* to renounce (as a right or position) by a formal act . . . to give up one's office or position: QUIT." WEBSTER'S NINTH COLLEGIATE DICTIONARY 1003 (1983). *See, e.g., Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d DCA 1999) (applying the "principle of contract interpretation which requires that the words used by the parties must be given their plain and ordinary meaning" and noting that "[o]ne looks to the dictionary for the plain and ordinary meaning of words"). In this case, the clear implication of a member resigning his or her membership is that the member has renounced his or her status as a member and, thereby, renounced his or her right to use Club Facilities. Thus, any refusal by Trump to allow individuals on the resignation list to continue to use Club Facilities is not—as Plaintiffs allege— a "revocation" of any rights that those former members possess. [Doc. No. 23 at ¶¶78, 106.] Plaintiffs voluntarily relinquished those rights when they resigned their memberships.

Neither the Membership Agreements nor the Rules and Regulations suggest or indicate that a member who resigns is entitled to continue using the Club Facilities. Indeed, as noted above, these documents indicate that only "*membership* in the Club" entitles one to use Club Facilities. Once that membership has been resigned and transferred to the Club, the individual who resigned that membership has no right to continued use of the Club Facilities. As alleged in

- 16 -

the Amended Complaint, each of the three named Plaintiffs resigned his membership, thereby forfeiting his rights to use Club Facilities.   [*See* Doc. No. 23 at ¶¶64, 66, 68.] Consequently, Trump had no obligation to allow any of the named Plaintiffs access to Club Facilities, and Plaintiffs cannot plausibly maintain that denying them access to Club Facilities is wrongful or supports any of their causes of action.[5]

> C.   Trump's Continued Collection of Payments from Plaintiffs Would Not be Wrongful, As Plaintiffs Are Obligated to Continue Paying Dues and Other Payments Even After Resigning Their Memberships.

Plaintiffs' last central allegation is that Trump and RBF have wrongfully "continued to collect and seek to collect ongoing dues from Plaintiffs and Class Members." [Doc. No. 23 at ¶123.]   Even if RBF could be liable for Trump's collection efforts taken after Trump's acquisition of the Club, under the plain terms of the Membership Documents, former Club members who have resigned their memberships are obligated to continue paying dues and other payments until their memberships are reissued—or, under the Legacy Addendum created by Trump, when new memberships are issued such that the resigned membership is deemed to have been reissued.

The RBF Membership Plan states—under the heading "Payment of Dues by a Resigned Member"—that individuals who resign their memberships "shall be obligated to continue to pay dues, fees and other charges associated with the resigned membership until the reissuance of the

---

[5] The fact that RBF may have permitted Plaintiff Ralph Willard and his wife to continue using the Club Facilities until their membership was re-issued does not support the notion that they were entitled under the Membership Documents to continue using Club Facilities. [Doc. No. 23-10, p. 2.]   The RBF Membership Plan Rules and Regulations specifically provide that "[a]ny member of the Club, who has had his membership privileges terminated for any reason other than the failure to meet eligibility for membership, shall be eligible for membership or permitted to use the Club Facilities *at the discretion of the Club*." [Doc. No. 23-4, p. 43] (emphasis added). That RBF, at its discretion, may have had a practice of allowing certain individuals who resigned their memberships to continue using Club Facilities does not indicate that those individuals had any *entitlement* to use Club Facilities or that Trump is obligated to continue such a practice.

membership by the Club to a new member." [Doc. No. 23-4, p. 19.]  The RBF Membership Plan Rules and Regulations reiterate that even after resignation of membership privileges, the former member remains liable for unpaid dues, fees, and other charges. [Doc. No. 23-4, p. 42.]  Thus, even after Plaintiffs resigned their memberships, they remained liable for ongoing payments and dues under the plain terms of their Membership Agreements and the Rules and Regulations.

### III.   Plaintiffs' Request for Injunctive Relief Is Nothing More Than an Attempt to Re-Characterize a Claim for Money Damages.

In Count III, Plaintiffs seek injunctive relief "to prevent Defendants RBF and JGC from continuing to retain monies due and owing to Plaintiff and Class Members . . . ." Doc. No. 23 at ¶128. "In Florida, to obtain injunctive relief a party generally must demonstrate: (1) a clear legal right; (2) the inadequacy of a remedy at law; and (3) that irreparable injury will occur if such relief is not granted." *Winn-Dixie Stores, Inc. v. Big Lots Stores, Inc.*, 886 F. Supp. 2d 1326, 1347-48 (S.D. Fla. 2012). As discussed in the preceding section, Plaintiffs' own exhibits demonstrate that Plaintiffs have no clear legal right to the return of their membership deposits or to prevent Trump from continuing to collect membership dues.  However, even if Plaintiffs had a legal right to payment, their request for injunctive relief is unnecessary and improper because it is nothing more than a thinly-disguised plea for money damages. Plaintiffs have an adequate remedy at law and cannot show irreparable harm.  Count III must be dismissed.

"It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *Rosen v. Cascades Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994); *Weinstein v. Aisenberg*, 758 So. 2d 705, 706 (Fla. 4th DCA 2000) ("A claim for money damages does not provide a sufficient basis for injunctive relief.").  Plaintiffs' principal allegation in support of injunctive relief is that Defendants "continue to retain monies due and owing

Plaintiffs and Class Members . . . and unless enjoined by this Court will continue to retain such monies." [Doc. No. 23 at ¶126.]  While this allegation is cast in equitable terms, Plaintiffs are plainly seeking payment of money they claim they are owed.

Under Florida law, such claims can be adequately compensated through a breach-of-contract action for money damages.  This is particularly true where, as here, any damages owing to a plaintiff can be easily calculated.  *See Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1347 (S.D. Fla. 2010) (dismissing prospective condominium purchaser's claim for equitable relief for return of escrow deposit, noting that "[t]he buyer has an adequate remedy at law: damages under a breach of contract claim" and that "[t]his is not a situation which money damages would be inadequate nor is this a situation which it would be difficult to determine the monetary amount of the damages") (applying Florida law).

Plaintiffs' reference to the "Defendants' on-going course of conduct" [Doc. No. 23 at ¶127] does not support a finding that Plaintiffs have no adequate remedy at law or that the harm is irreparable. As Florida courts have recognized, "an injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard." *Hatfield v. AutoNation, Inc.*, 939 So. 2d 155 (Fla. 4th DCA 2006). Even assuming that Plaintiffs are suffering ongoing, wrongful collections of payments, any harm to Plaintiffs is **not** irreparable because their claims can ultimately be remedied by money damages that can be readily determined. *See, e.g., SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. Appx. 502, 503 (11th Cir. 2007) ("[I]f an injury can be undone through monetary remedies, it is not irreparable.") (quoted in *Papadopoulis v. Sidi*, 547 F. Supp. 2d 1262 (S.D. Fla. 2008)) (emphasis added).

And to the extent that Plaintiffs seek an injunction to prevent *future* collection of payments, their request is superfluous in light of their breach-of-contract claim for sums that

have already been collected.  In *Consolidated Edison Co. of New York, Inc. v. U.S., Dept. of Energy*, 247 F.3d 1378 (Fed. Cir. 2001), for example, several nuclear utilities challenged a federal assessment scheme in parallel actions in different federal courts:  an action for money damages for recovery of *past* levies, and an action for injunctive relief in district court to prevent *future* collection of the assessments. The Federal Circuit found that the claim for money damages provided an adequate remedy, noting that a favorable finding would, necessarily, preclude the government from collecting further sums. *Id.* at 1385. Here, in a similar way, if Plaintiffs were to succeed on their breach-of-contract and/or declaratory actions, it would necessarily imply that Trump and/or RBF breached the terms of the Membership Agreements and, therefore, have no continuing right to collect ongoing payments from Plaintiffs.  Plaintiffs' success on their breach-of-contract action for *past* breaches would obviate the need for relief against *future* collections.

Thus, Plaintiffs' request for injunctive relief is improper and unnecessary, as Plaintiffs have an adequate remedy at law—namely, money damages for any refunds or payments to which Plaintiffs may be entitled.  Count III must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant RBF respectfully requests that this Court dismiss all counts of the Amended Complaint as to it pursuant to Federal Rule of Civil Procedure 12(b)(6) and grant any other relief that the Court deems proper.

**Dated**: September 9, 2013                    Respectfully Submitted,

                                               *s/ Jerry R. Linscott*
                                               Jerry R. Linscott, Esquire
                                               Florida Bar No. 148009
                                               E-mail: jlinscott@bakerlaw.com
                                               Secondary e-mail: mrios@bakerlaw.com

                                               Julie Singer Brady, Esquire
                                               Florida Bar No. 0389315

E-mail: jsingerbrady@bakerlaw.com
Secondary e-mail: orlbakerdocket@bakerlaw.com
**BAKER & HOSTETLER LLP**
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802
Telephone: (407) 649-4000
Telecopier: (407) 841-0168
*Attorneys for RBF, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

| | |
|---|---|
| Steven R. Jaffe<br>E-mail: steve@pathtojustice.com<br>Mark S. Fistos<br>E-mail: mark@pathtojustice.com<br>Seth Lehrman<br>E-mail: seth@pathtojustice.com<br>FARMER, JAFFE, WEISSING,<br>EDWARDS, FISTOS & LEHRMAN, P.L.<br>425 N. Andrews Ave., Suite 2<br>Fort Lauderdale, Florida 33301<br>Telephone 954-524-2820<br>Facsimile 954-524-2822<br>Attorneys for Plaintiffs | Herman J. Russomanno<br>E-mail: hrussomanno@russomanno.com<br>Robert J. Borrello<br>E-mail: rborrello@russomanno.com<br>Herman J. Russomanno III<br>E-mail: herman2@russomanno.com<br>RUSSOMANNO & BORRELLO, P.A.<br>Museum Tower, Penthouse 2800<br>150 West Flagler Street<br>Miami, Florida 33130<br>Telephone: (305) 373-2101<br>Facsimile: (305) 373-2103<br>Attorneys for Defendant Jupiter Golf Club, LLC<br>d/b/a Trump National Golf Club Jupiter |

*s/ Jerry R. Linscott*
Jerry R. Linscott