UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80456-CIV-MARRA/MATTHEWMAN

NORMAN HIRSCH, MATTHEW DWYER,
and RALPH WILLARD, individually and on
behalf of all others similarly situated,

Plaintiffs,

vs.

JUPITER GOLF CLUB LLC, a Delaware LLC
TRUMP NATIONAL GOLF CLUB JUPITER
and RBF, LLC d/b/a THE RITZ CARLTON
GOLF CLUB & SPA JUPITER,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Jupiter Golf Club, LLC's Motion to Dismiss Plaintiff's Amended Complaint (DE 30); Defendant RBF, LLC's Motion to Dismiss Amended Complaint (DE 31); Defendant RBF, LLC's Motion for Temporary Stay of Discovery (DE 42); Defendant RBF, LLC's Request for Hearing (DE 43); Defendant Jupiter Golf Club, LLC's Motion for Temporary Stay of Discovery (DE 45) and Joint Motion for Extension of Discovery Deadline (DE 49). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I.  Background

On August 8, 2013, Plaintiffs Norman Hirsch, Matthew Dwyer and Ralph Willard filed a three-count class action Amended Complaint (DE 23) for declaratory judgment (count one), breach of contract (count two) and injunctive relief (count three). According to the Amended

Complaint, Plaintiffs have paid refundable membership deposits in connection with the purchases of memberships to the Ritz-Carlton Golf Club & Spa Jupiter ("the Club"). These payments, ranging from approximately $35,000.00 to $210,000.00, were made to Defendant RBF, LLC d/b/a the Ritz-Carlton Golf Club & Spa Jupiter ("RBF"). Under the membership agreements, RBF had discretion to sell the Club and its membership but only subject to the terms and provisions of the membership agreements and plans that specified terms regarding membership deposit refunds and member resignations. (Am. Compl. ¶¶ 1-2.) Donald Trump, through the Jupiter Golf Club, LLC ("JGC"), recently purchased the Club from RBF. (Am. Compl. ¶ 3.)

Under the sales contract, JGC was to honor the membership agreement and membership plan. (Am. Compl. ¶ 4.) RBF and JGC agreed to a cap on refund liability not based on the membership agreements and the RBF membership plan. RBF has also refused access to the Club to members who are on a waiting list for resignation, which contravenes the membership agreement. (Am. Compl. ¶ 5.)

After acquiring the Club, Trump, through JGC, changed the terms of membership, terminated the RBF membership plan, recalled the Club memberships, and terminated the categories of Club membership by members in good standing and JGC has refused to refund membership deposits. (Am. Compl. ¶ 6.) Since January 1, 2013, RBF has failed and refused to refund membership deposits to Plaintiffs and class members. (Am. Compl. ¶ 7.) Although JGC represented to Plaintiffs and class members that they would have no further liability to pay Club dues, JGC, through former RBF personnel, has continued to bill and send collection demands to Plaintiffs and class members. (Am. Compl. ¶ 8.) Plaintiffs seek a refund of membership deposits

2

and a declaration concerning their liability for Club dues. (Am. Compl. ¶ 9.)

On or about December 4, 2012, JGC acquired the assets of the Club from RBF for a purchase price of $5,000,000. RBF and JGC memorialized the sale in a "Purchase and Sale Agreement" ("Sale Contract"). Former RBF personnel continued to perform services in the Club, and RBF continued certain Club-related services under associated leases and services agreements with JGC. (Am. Compl. ¶ 39.)  Under the Sale Contract, JGC assumed the obligations owed to Plaintiffs and Class Members under Membership Agreements and the Membership Plan, including club facility usage terms and the obligation to refund Membership Deposits to Plaintiffs and Class Members. Under the Sales Contract, RBJ remains liable for breach of contract, torts, and other violations of law. (Am. Compl. ¶ 40.)

On or about December 4, 2012, following JGC's acquisition of the Club, JGC presented Plaintiffs and Class Members with a proposed Trump National Golf Club Jupiter Membership Plan ("Trump Membership Plan") and a Legacy Addendum that they were to execute to "opt in." (Am. Compl. ¶ 45.)  Thereafter, Donald J. Trump, acting on behalf of Defendant JGC, declared that he would deny Plaintiffs and Class Members membership rights in the Club unless they "opted-in," signed the Legacy Addendum and effectively converted their refundable deposit into a non-refundable deposit.  Trump represented that "if a person is on the resignation list, the membership does not want them to be an active member of the club --- likewise as the owner of the club, I do not want them to utilized the club nor do I want their dues."  (Am. Compl. ¶ 48.) Plaintiffs and Class Members continued their refusal to sign the Legacy Addendum for and the Club continued to both accept Plaintiffs and Class Members as members and accept their dues from December 2012, through present. (Am. Compl. ¶ 49.)

3

Beginning in or about December of 2012, JGC asserted that it had the unilateral right to amend the terms of Plaintiffs' and Class Members' Memberships, so as to modify or deny the right of the Plaintiffs and Class Members to receive a full refund of their Membership Deposits, and that it would no longer make timely refunds with regard to future resignations. (Am. Compl. ¶ 50.) The "Reissuance of a Resigned Membership" section of the JGC Legacy Addendum reflects that JGC terminated the refundable categories of membership held by Plaintiffs and Class Members, stating that "none of the memberships in the Club issued by the Club Owner [JGC] include a refundable initiation fees or refundable membership deposits. Therefore, a Refundable Membership will never be reissued." (Am. Compl. ¶ 51.) JGC terminated the RBF Membership Plan applicable to Plaintiffs and proposed Class Members. JGC issued the Trump Membership Plan that supplanted and replaced the RBF Membership Plan. (Am. Compl. ¶ 52.) JGC recalled the memberships of Plaintiffs and Class Members. Trump's December 17th Letter, issuance of the Trump Membership Plan and other changes to the terms and conditions of Plaintiffs' and Class Members memberships destroyed the purpose and effectiveness of these memberships. (Am. Compl. ¶ 53.)

RBF failed to convey title to the club facilities subject to the full terms and provisions of the existing RBF Membership Plan. Rather, RBF conveyed the refund obligation subject to a cap of $50,000,000. In other words, RBF limited JGC's refund obligation to this cap amount. No cap appears in any of the RBF Membership Agreements that Plaintiffs and Class Members executed. Nor does the Sales Contract indicate that RBF required JGC to produce a financial statement or evidence indicating it had the financial wherewithal to fulfill any member refunds. (Am. Compl. ¶ 55.)

Section 8.9 of the Purchase and Sale Agreement provides, in pertinent part, that "Notwithstanding anything to the contrary, Purchaser [JGC] is not assuming an obligation to repay any Club Member's refundable deposit in excess of the Refund Obligations (i.e. in accordance with the limitations described in the definition of "Refund Obligations" in Section 1.62) or Refund Obligations in an aggregate amount in excess of $50,000,000.00". JGC has paid RBF a purchase price of $5,000,000, and received a liability of $50,000,000.00. (Am. Compl. ¶ 56.)

JGC did not purchase the Club assets subject to the terms and provisions of the RBF Membership Plan because Section 8.9 of the Sales Contract caps or limits the amount of the Club owner's refund obligation and eliminates the Club members' right to receive any increase in the amount of the membership deposit. (Am. Compl. ¶ 61.)

Following JGC's unilateral termination of the Plaintiffs' and Class Members' categories of membership, JGC has continued to invoice, collect, and seek to collect the payment of ongoing dues from Plaintiffs and Class Members. (Am. Compl. ¶ 70.)

JGC had a duty under the terms of the subject RBF Membership Agreements, Membership Plan and the Club's rules and regulations, to allow dues paying members on the resignation list, including Plaintiffs and Class Members, continued access and use of Club Facilities. (Am. Compl. ¶ 77.)  JGC has violated the terms and conditions of the subject RBF Membership Agreements by revoking Plaintiffs' and Class Members' license to use Club Facilities. Plaintiffs' and Class Members' placement on the club's resignation lists does not permit JGC to limit, restrict or prohibit Plaintiffs' or Class Members' use of Club Facilities. (Am. Compl. ¶ 78.)

Defendant RBF moves to dismiss on the following grounds: (1) Trump assumed liability for refund of membership deposits and Plaintiffs have no claims against RBF; (2) Trump expressly assumed the obligations of membership agreements; (3) Trump's assumption of refund obligations greatly exceeds Plaintiffs' potential claims; (4) Plaintiffs cannot establish breach of a right to receive a refund in excess of their membership deposit; (5) the exhibits to the Complaint contradict Plaintiffs' allegations that Trump has effectively terminated all existing categories of membership, wrongfully denied Plaintiffs' access to club facilities or wrongfully collected or retained monies from Plaintiffs and (6) Plaintiffs' request for injunctive relief is an improper re-characterization of a claim for money damages.

Defendant JGC also moves to dismiss. In so moving, JGC argues: (1) Trump has not terminated all the existing categories of membership; (2) Plaintiffs have no claim against Trump for refusing them access to club facilities after resignation; (3) Plaintiffs are obligated to continue to pay dues and other payments after resigning their memberships and (4) the claim for injunctive relief is simply a claim for money damages.

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. Discussion

After careful review, the Court concludes that, at this stage in the proceeding, it cannot decide, as a matter of law, the rights, responsibilities and obligations of Defendants relative to Plaintiffs.  Simply put, there are too many factual questions to be able to resolve whether Defendants breached their obligations under the membership contract.  See Ness Racquet Club, LLC v. Ocean Four 2108, LLC, 88 So. 3d 200, 203 (Fla. Dist. Ct. App. 2011) ("Generally, whether there has been a breach of the terms of the contract is a question of fact, and the issue of whether there is a defense that excuses the breach is typically a question of fact.").

For example, Plaintiffs contend that JGC terminated the RBF membership plan.  In making this claim, Plaintiffs allege that JGC issued a new membership plan. (Am. Compl. ¶ 52.) In response, JGC contends the memberships were not terminated.  JGC points to the Trump Legacy Addendum as evidence that certain refundable memberships would be honored and the

Legacy Addendum provided a procedure under which those who resign their memberships could receive a return of their membership deposits.  In other words, JSC claims the membership plan was amended, not terminated.  The Court cannot determine, at the motion to dismiss stage, whether the Legacy Addendum served to amend the membership plan or terminate it.  Likewise, without the benefit of a complete record, the Court finds that it cannot determine, as a matter of law, the obligations of JGC with respect to providing access to the facilities by resigned members or the obligations of Plaintiffs with respect to making payments once they resigned their memberships.

Furthermore, the Court cannot determine, as a matter of law, whether RBF breached the contract.  The Amended Complaint alleges RBF breached the contract by conveying the refund obligation to JFC subject to a $50,000,000.00 cap.  (Am. Compl. ¶ 115.)  RBF, however, relies upon the Sales Contract between RBF and Trump and argues that the agreement made clear that Trump assumed the membership refund obligations.  The Amended Complaint, however, alleges that the Sales Contract essentially served to breach the membership agreements.  (Am. Compl. ¶ 116.)  Thus, the Court requires a full factual record to allow it to examine and compare how these documents work together.

Lastly, the Court rejects Defendants' argument that the declaratory relief claim should not entertained when the breach of contract claim provides Plaintiffs with full and adequate relief.  Such a position is in direct contravention of Rule 57 of the Federal Rules of Civil Procedure.  That rule provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ .P. 57.   Accordingly, courts have held that the existence of another remedy does not preclude declaratory relief.  See Powell

v. McCormack, 395 U.S. 486, 517-18 (1969); Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734, 737 (2d Cir. 1992); Greater Los Angeles Council on Deafness v. Zolin, 812 F.2d 1103, 1112 (9th Cir. 1987); Tierney v. Schweiker, 718 F.2d 449, 457 (D.C. Cir. 1983). Therefore, the fact that Plaintiffs brought an action for breach of contract does not prevent them from also seeking a declaratory judgment.  See City of Leominster v. Pittsburgh-Des Moines Steel Co., 201 F. Supp. 66, 68 (D. Mass. 1962) (allowing declaratory judgment claim as well as breach of contract claim to proceed).  The same rationale applies to Plaintiffs' claim for injunctive relief.  See Adelphia Cable Partners, Inc. v. E & A Beepers Corp., 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief").

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Jupiter Golf Club, LLC's Motion to Dismiss Plaintiff's Amended Complaint (DE 30) is **DENIED**.

2) Defendant RBF, LLC's Motion to Dismiss Amended Complaint (DE 31) is **DENIED**.

3) Defendant RBF, LLC's Motion for Temporary Stay of Discovery (DE 42) is **DENIED AS MOOT**.

4) Defendant RBF, LLC's Request for Hearing (DE 43) is **DENIED.**

5) Defendant Jupiter Golf Club, LLC's Motion for Temporary Stay of Discovery (DE 45) is **DENIED AS MOOT**.

6) The Joint Motion for Extension of Discovery Deadline (DE 49) is **GRANTED**.

The discovery period is extended to August 8, 2014.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of May, 2014.

_____
KENNETH A. MARRA
United States District Judge