UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80456-CIV-MARRA/MATTHEWMAN

NORMAN HIRSCH, MATTHEW DWYER,
and RALPH WILLARD, individually and on
behalf of all others similarly situated,

Plaintiffs,

vs.

JUPITER GOLF CLUB LLC, a Delaware LLC
TRUMP NATIONAL GOLF CLUB JUPITER
and RBF, LLC d/b/a THE RITZ CARLTON
GOLF CLUB & SPA JUPITER,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiffs' Motion for Class Certification (DE 100). The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

On August 8, 2013, Plaintiffs Norman Hirsch, Matthew Dwyer and Ralph Willard filed a three-count class action Amended Complaint (DE 23) for declaratory judgment (count one), breach of contract (count two) and injunctive relief (count three). In their amended complaint, Plaintiffs allege that they signed agreements to be members of the Ritz-Carlton Golf Club & Spa, Jupiter (the "Club") which Defendants RBF, LLC d/b/a the Ritz-Carlton Golf Club & Spa Jupiter ("RBF") and Jupiter Golf Club, LLC ("JGC") owned either previously (RBF) or currently (JGC). When JGC bought the club from RBF, Plaintiffs allege that the new owner changed the club membership terms set forth in the membership agreements, which triggered Defendants'

obligation under the contract to refund Plaintiffs' membership deposits. JGC breached the membership agreements by attempting to alter the membership refund policy and RBF failed to convey title to the club facilities subject to the terms of the existing membership plan. Plaintiffs allege these claims on behalf of themselves and similarly situated individuals. Defendants moved to dismiss the Complaint (DE 30 and 31), which the Court denied (DE 50).

Plaintiffs now seek to certify a class pursuant to Federal Rule of Civil Procedure 23. They propose a class defined as:

> All persons who purchased a Full Golf, Fractional Golf or Social and Spa membership from RBF to The Ritz-Carlton Golf Club & Spa, paid a Membership Deposit, have not received a full refund of their Membership Deposit, and have not executed the Trump Legacy Addendum.

(DE 100 at 5.)

Plaintiffs assert that they have met all prerequisites to class certification under Rule 23. In response, RBF argues that there are no common questions with regard to RBF's liability. According to RBF, Plaintiffs' allegations contradict the language of the Membership Agreements and the Membership Plan on which their claims are based. RBF states that "[b]ecause there is no question that RBF has no liability to the Plaintiffs, there, therefore can be no common question that satisfies the requirements of Rule 23." (DE 111 at 8) (emphasis omitted). JGC contends that there is no common question because Plaintiffs have not shown that there is any question as to whether JGC: (1) terminated all existing categories of membership; (2) terminated Plaintiffs' membership plans; (3) recalled Plaintiffs' memberships; (4) denied Plaintiffs' access to club facilities and (5) continued to collect dues and payments from Plaintiffs improperly.

II.  Discussion

Rule 23 governs the certification of class actions.  Rule 23(a)'s requirements are quite familiar: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).  In additional to Rule 23(a), the party seeking class certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).  Plaintiffs seek certification under Rule 23(b)(3) and 23(c)(4).  Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(c)(4) states: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).

Rule 23 is more than a pleading standard; it requires the party seeking class certification to affirmatively demonstrate compliance with the Rule, and it requires the trial court to engage in a "rigorous analysis" of whether the Rule 23(a) prerequisites have been satisfied.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

With these principles in mind, the Court analyzes whether Plaintiffs have affirmatively demonstrated Rule 23's requirements for class certification.

3

A. Rule 23(a)

**1. Numerosity**

A party seeking class certification must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although mere allegations of numerosity are insufficient to satisfy Rule 23(a)(1), "a plaintiff need not show the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." Vega v. T-Mobile USA Inc., 564 F.3d 1256, 1267 (11th Cir. 2009). The Eleventh Circuit has noted that, "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (citing 3B Moore's Federal Practice ¶ 23.05[1] n.7 (1978)); see also Vega, 564 F.3d at 1266-67.

In this case, Plaintiffs assert that, based on material produced in discovery, there are 150 individuals who purchased one of the three Club memberships, paid a Membership Deposit, have not received a full refund of their deposit and have not signed a Trump Legacy Addendum converting their deposit to a non-refundable deposit. In support, Plaintiffs provided the Court with materials identifying these 150 individuals, residing throughout the United States, and Defendants do not challenge these numbers. (Ex. A to DE 100.) Thus, the Court finds that Plaintiffs have produced sufficient evidence to support a finding of numerosity in this case.

**2.     Commonality**

Next, the Court must be satisfied that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This part of Rule 23 "does not require that <u>all</u> the questions of law and fact raised by the dispute be common," but rather that some questions of law or fact be shared by class members. <u>Vega</u>, 564 F.3d at 1268 (emphasis added). It is insufficient, however, to merely allege that class members "have all suffered a violation of the same provision of law." <u>Wal-Mart</u>, 131 S. Ct. at 2551. Instead, their claims must depend on a "common contention" "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

By definition, the class contains only individuals who purchased one of the three Club memberships defined by the terms and conditions of the Membership Agreement and Plan, paid a membership deposit but did not receive a full refund of the deposit and has not signed the Legacy Addendum converting the deposit back to a non-refundable deposit. The underlying common legal question is whether Defendants breached the Membership Agreement. Indeed, "[i]t is the form contract, executed under like conditions by all class members, that best facilitates class treatment." <u>Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Svcs., Inc.</u>, 601 F.3d 1159, 1171 (11th Cir. 2010) (discussing predominance determination in 23(b)(3)); <u>see also</u> <u>Kolbe v. BAC Home Loans Svcing, LP</u>, 738 F.3d 432, 441 (1st Cir. 2013) ("Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member."); <u>In re Checking</u>

Account Overdraft Litigation, 275 F.R.D. 666, 677 (S.D. Fla. 2011) (certifying class where "agreements at issue . . . are uniform form contracts offered on a take-it-or-leave it basis and were not the product of individual negotiation"); cf. Lawson v. Life of the South Ins. Co., 286 F.R.D. 689, 698 n.9 (M.D. Ga. 2012) ("Class actions can be maintained even where class members' claims are based on different contracts if relevant contractual terms raise common questions of law and fact and do not differ materially") (emphasis omitted).  Defendants, however, rely upon Wal-Mart to contend that a more rigorous analysis is required before granting class certification and that class certifications must be based on evidence, not allegations.

In Wal-Mart, the United States Supreme Court rejected certification of a class of more than one million female Walmart employees in a Title VII case, holding that "[a] party seeking class certification must affirmatively demonstrate his compliance with the rule." Id. at 2551. The Supreme Court further noted that prior to certifying a class, a district court must engage in a "rigorous analysis" that will "entail some overlap with the merits of the plaintiff's underlying claim" and held that the class could not be certified because the plaintiffs could not demonstrate commonality under Rule 23(a). Id. at 2551, 2554–57.  In that case, the plaintiffs had relied on statistical evidence that women were paid less, anecdotal evidence of discrimination from 120 women, and a sociologist who opined that there was a culture of sex stereotyping at Walmart. Id. at 2549.  The Supreme Court found that this evidence was insufficient to establish commonality because it demonstrated no general policy of discrimination and no corporate direction of store managers' discretion. Id. at 2554.

Wal-Mart, however, was not the last word by the Supreme Court regarding class certification.  Two years later, the Supreme Court affirmed the certification of a class of plaintiffs

who were alleging security fraud in Amgen Inc. v. Connecticute Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1194 (2013).  In that case, the Supreme Court held that the plaintiffs need not prove the materiality element of the plaintiff's security fraud claim at the Rule 23(b)(3) class certification stage; instead, the plaintiffs needed only to demonstrate that common questions would predominate.  Id. at 1191 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").  The Supreme Court went on to state that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage" and a Rule 23 certification ruling is "not to adjudicate the case."[1]  Id. at 1191, 1194-95.

The Court distinguishes this case from Wal-Mart.  Wal-Mart was an employment discrimination case in which the plaintiffs claimed they suffered from the same discriminatory policy.  Yet, the pay and promotion decisions were left to the discretion of different, localized decision makers and there was no assertion of discriminatory bias on the part of the same supervisor  Walmart, 131 S. Ct. at 2551, 2554; see also Andrews v. Am. Tel. & Tel. Co., 95 F.3d

---

[1] Only one month later, the Supreme Court reversed a certification of damages and liability class under Rule 23(b)(3) in Comcast. The district court in Comcast had certified a class of more than two million Comcast subscribers who sought damages for violations of federal antitrust laws. Comcast, 133 S. Ct. at 1429-30.  The plaintiffs in Comcast had proposed four theories of antitrust impact, but the district court found that only one of those theories could be proven using common evidence. Id.  at 1431. Notwithstanding, the district court certified a damages class even though the plaintiffs' expert calculated damages using a model that did not isolate the damages resulting from the one credited theory of antitrust impact. Id.  The Supreme Court reversed, stating that  the "[c]alculations [of damages] need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." Id. at 1433.  Although Comcast addressed Rule 23(b)(3), the Supreme Court stated that Rule 23(b)(3) required a "rigorous analysis" and that Rule 23(b)(3) may require "inquiry into the merits of the claim." Id. at 1432–33.

1014, 1023 (11th Cir. 1996) (common issues will not predominate over individual questions if, "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.") Clearly then, common evidence could not be used to prove the Wal-Mart plaintiffs' Title VII claims.

 Here, the parties are disputing the interpretation of the language in a form contract, which all class members executed. Cf. Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) ("Most importantly, [Plaintiff] has not shown commonality under a breach of contract theory because he has not alleged in his complaint the existence of a common contract under which T–Mobile employed all class members."). The vast majority of Defendants' arguments challenging class certification simply cite to the language of Membership Agreement and other supporting documents, which arguments go to the merits of the underlying claim. (See DE 111 at 8 "Plaintiffs' bare assertion contradict the unequivocal language of the Membership Agreements and the Membership Plan on which their claims are based.") Plaintiffs need not prove their claim to be granted class certification. Instead, it is sufficient for Plaintiffs to demonstrate that common questions predominate such as whether Defendants breached the Membership Agreement and the subsidiary legal questions that flow from that question. See Oakley v. Verizon Communications, Inc., No. 09–9175, 2012 WL 335657, *14 (S.D.N.Y. Feb. 1, 2012) ("Of course, when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied, even after [Wal-Mart].").

 In sum, the Court finds that Plaintiffs have demonstrated that the claims of the class share a common contention capable of classwide resolution.

### 3. Typicality

Next, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although the "commonality and typicality requirements of Rule 23(a) tend to merge," Wal-Mart, 131 S. Ct. at 2551 n.5, typicality requires special consideration of whether there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

In this case, the class is defined to include individuals who, like Plaintiffs, purchased a Full Golf, Fractional Golf or Social and Spa membership from RBF to The Ritz-Carlton Golf Club & Spa, paid a Membership Deposit, have not received a full refund of their Membership Deposit, and have not executed the Trump Legacy Addendum. This nexus is sufficient to render Plaintiffs' breach of contract claim typical of the breach of contract claims of the class. Plaintiffs have satisfied the typicality requirement.

### 4. Adequacy

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted); see also Wal-Mart, 131 S. Ct. at 2551 n.5.

Defendants do not challenge the assertion that Plaintiffs and their counsel will vigorously prosecute this action. The Court finds that the named Plaintiffs have no substantial conflict of interest with the class. Further, based on the declarations of Plaintiffs and their counsel (DE 100-1, 100-2, 100-3, 100-4), the Court finds that Plaintiffs will adequately prosecute this action on behalf of the class. Plaintiffs have satisfied Rule 23(a)(4).

**B.     Rule 23(b)**

Plaintiffs must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). Comcast Corp., 133 S. Ct. at 1432. Plaintiffs assert that they have satisfied Rule 23(b)(3), which requires a finding that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Regarding the predominance requirement of Rule 23(b)(3), "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004), abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008). The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

The Court finds that the common questions of law and fact in this case predominate over individual questions that class members might present. The allegations of breach of contract center around a common question whether Defendants breached the Membership Agreement.

No individual questions threaten to overshadow these common questions.

Turning to the superiority requirement, the Court finds that a class action is superior to other methods of fairly and efficiently adjudicating this controversy.  The large number of potential claims and the desirability of adjudicating these claims consistently indicate that class treatment is the superior method of adjudicating this FDCPA claim.

Accordingly, the Court finds that Plaintiffs have met their burden of satisfying Rule 23(b)(3), and class certification is appropriate.

<u>III. Conclusion</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification (DE 100) is **GRANTED**.  Pursuant to Rule 23(c), the Court hereby **CERTIFIES A CLASS** ("the Class") defined as follows:

> All persons who purchased a Full Golf, Fractional Golf or Social and Spa membership from RBF to The Ritz-Carlton Golf Club & Spa, paid a Membership Deposit, have not received a full refund of their Membership Deposit, and have not executed the Trump Legacy Addendum.

The Court hereby **APPOINTS** Plaintiffs Norman Hirsch, Matthew Dwyer and Ralph Willard representatives of the Class. Pursuant to Federal Rule of Civil Procedure 23(g), the Court hereby **APPOINTS** Steven R. Jaffee, Mark S. Fistos and Seth Lehrman counsel to the Class. The Class claim is the breach of contract claim contained in count two of the Amended Complaint.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 12th day of May, 2015.

_____
KENNETH A. MARRA
United States District Judge