**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
**Case Number: 13-80456-CIV-Marra/Matthewman**

NORMAN HIRSCH, MATTHEW DWYER,
and RALPH WILLARD, individually
and on behalf of all others similarly situated,

      Plaintiffs,

v.

JUPITER GOLF CLUB LLC, a Delaware
LLC d/b/a TRUMP NATIONAL GOLF
CLUB JUPITER and RBF, LLC d/b/a
THE RITZ-CARLTON GOLF CLUB &
SPA JUPITER,

      Defendants.

_____/

**SECOND AMENDED**
**CLASS ACTION COMPLAINT**

      Plaintiffs Norman Hirsch, Matthew Dwyer, and Ralph Willard, on behalf of themselves

and all others similarly situated sue Defendants Jupiter Golf Club LLC and RBF, LLC, and allege

the following:

**NATURE OF CASE**

      1.    This putative class action is brought on behalf of individuals who paid refundable

deposits in connection with their purchase of memberships to The Ritz-Carlton Golf Club & Spa

Jupiter and who have been denied a refund of their respective Membership Deposits by Defendants

RBF, LLC and Donald Trump's affiliated business Defendant Jupiter Golf Club LLC ("JGC").

      2.    Plaintiffs and Class Members paid substantial Membership Deposits to Defendant

RBF, LLC ranging from approximately $35,000 to $210,000, as well as annual dues. The

Membership Deposits are refundable based upon the terms of the applicable Membership Agreements which Plaintiffs and Class Members entered into with RBF.

3.      Donald Trump, through Jupiter Golf Club LLC, recently purchased The Ritz-Carlton Golf Club & Spa Jupiter (the "Club") from RBF, LLC. Immediately after acquiring the Club, Trump, through JGC, unilaterally and systematically changed the terms of membership, terminated the categories of membership enjoyed by Plaintiffs and Class Members who were members-in-good-standing on the resignation waiting list and has refused to refund Membership Deposits to Plaintiffs or Class Members.

4.      Since January 1, 2013, RBF has similarly failed and refused to refund Membership Deposits to Plaintiffs and Class Members despite the clear provisions in their standardized Membership Agreement and Membership Plan that require RBF to refund Membership Deposits upon "termination of any category of membership".

5.      In addition, as alleged below, JGC represented in writing to Plaintiffs and Class Members on multiple occasions that they would not have any further liability to pay club dues. Yet, despite these numerous consistent representations, JGC has continued to bill and send collection demands to Plaintiffs and Class Members.

6.      In this action, Plaintiffs therefore seek, for themselves and Class Members, a refund of membership deposits based on a breach of their membership agreement and a declaration from the Court concerning their liability for club dues.

## PARTIES

7.      Plaintiff Norman Hirsch is a citizen and resident of the State of Florida.

8.      Plaintiff Matthew Dwyer is a citizen and resident of the Commonwealth of Massachusetts.

2

9.      Plaintiff Ralph Willard is a citizen and resident of the State of North Carolina.

10.      Jupiter Golf Club LLC ("JGC") is a foreign limited liability company organized in Delaware with its principal place of business in Florida. JGC does business as Trump National Golf Club Jupiter ("Trump National"). The members of JGC are Jupiter Golf Club Managing Member Corp. and DJT Holdings LLC. Jupiter Golf Club Managing Member Corp. is a foreign corporation incorporated in Delaware with its principal place of business in Florida. DJT Holdings LLC is a limited liability company organized in Delaware with its principal place of business in Florida. The members of DJT Holdings LLC are Donald J. Trump, an individual, and DJT Holdings Managing Member LLC. Donald J. Trump maintains his primary residence and principal place of business in New York; Donald Trump is a citizen of New York (as it is where he is domiciled). DJT Holdings Managing Member LLC is a limited liability company organized in Delaware with its principal place of business in New York. The sole member of DJT Holdings Managing Member LLC is Donald J. Trump. Based on the foregoing, JGC is a citizen of Florida, Delaware and New York.

11.      RBF LLC is a Delaware Limited Liability Company. RBF formerly did business as the Ritz-Carlton Golf Club & Spa Jupiter ("Ritz-Carlton"). At all material times, RBF's principal place of business was in Palm Beach County, Florida. RBF is a citizen of the state of Florida because it is an unincorporated association organized under the laws of the State of Delaware with its principal place of business in Florida. RBF maintains its principal place of business in the State of Florida. The sole member of RBF is The Ritz-Carlton Development Company, Inc., a Delaware corporation with its principal place of business in the State of Florida. The Ritz-Carlton Development Company, Inc. is a citizen of the states of Florida and Delaware.

12.      None of the Plaintiffs are residents of the State of Delaware.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the complaint pursuant to 28 U.S.C. § 1332(d), because in the aggregate, the matter in controversy exceeds the sum or value of $5,000,000, and diversity of citizenship between the proposed Class Members and Defendants.

12.     Venue is proper in this Court because Defendants' principal places of business are located in this district and division and the causes of action accrued in this district and division.

## FACTS

**Ritz-Carlton**

13.     RBF owned and operated The Ritz-Carlton Golf Club & Spa Jupiter in Jupiter, Florida.

14.     RBF owned and operated a private golf club and spa in Jupiter, Florida known as The Ritz-Carlton Golf Club & Spa. RBF sold several categories of membership in The Ritz-Carlton Golf Club & Spa Jupiter, as well as residential real property located there.

15.     RBF sold various categories of Club memberships, including "Golf Memberships" ("Full Golf"), "Ritz-Carlton Club Golf Memberships" ("Fractional Golf"), and "Social and Spa Memberships" ("Social").  These memberships were governed by and subject to written agreements and membership plans containing standardized text and terms applicable to each Plaintiff and each Class Member.

**Plaintiff Matthew Dwyer**

16.     On May 29, 2003, Matthew Dwyer and RBF entered into a Ritz-Carlton Club Golf Membership Agreement ("Fractional Golf Membership Agreement"). Pursuant to the Fractional Golf Membership Agreement, Dwyer acquired a Fractional Golf membership and agreed to pay a $41,000 membership deposit to RBF. Dwyer paid the $41,000 membership deposit

4

in full to RBF. Attached as **Exhibit A** is a true and correct copy of the Fractional Golf Membership Agreement.

17.      The Fractional Golf Membership Agreement provides that the Membership Deposit is refundable under the following conditions: (1) when a resigned membership is reissued by the Club to a new member (Sec. III) or (2) the Club terminates "the Membership Plan or termination of any category of membership, recall of the membership, discontinuance of operation of all or substantially all of the Club's Facilities".

18.      In or about May 2003, Dwyer paid the full Membership Deposit due under the subject contract, in the amount of $41,000, to RBF. RBF acknowledged receipt of Dwyer's payment of the full deposit.

19.      Dwyer's Membership Deposit is refundable under the terms of the Fractional Golf Membership Agreement.

**Plaintiff Norman Hirsch**

20.      On or about June 12, 2006, Norman Hirsch entered into a Social & Spa Membership Agreement that contained the same or substantially the same material terms with respect to the refundability of the Membership Deposit as the Fractional Golf Membership Agreement entered into by Plaintiff Matthew Dwyer. Attached as **Exhibit B** is a true and correct copy of the RBF Social & Spa Membership Agreement.

21.      In or about 2006, Hirsch paid the full Membership Deposit due under the subject contract, in the amount of $55,000, to RBF. RBF acknowledged receipt of Hirsch's payment of the full deposit.

**Plaintiff Ralph Willard**

22.     On or about October 2, 2006, Ralph Willard entered into a Social & Spa Membership Agreement with RBF for the purchase of a Social and Spa membership. RBF accepted the agreement on October 3, 2006. Pursuant to this agreement, Willard acquired a Social & Spa Membership and agreed to pay a $55,000 Membership Deposit to RBF.

23.     Willard paid the $55,000 Membership Deposit in full to RBF. RBF acknowledged receipt from Willard of the full Social & Spa Membership Deposit.

24.     The Willard Social & Spa Membership Agreement contained the same or substantially the same material terms with respect to the refundability of the Membership Deposit as the afore-described Dwyer and Hirsch Membership Agreements.

25.     On August 13, 2008, Willard entered into a Full Membership Agreement with RBF, upgrading to a Full Golf membership. RBF accepted the agreement on August 13, 2008. Pursuant to this agreement, Willard agreed to pay a $210,000 Membership Deposit to RBF.

26.     The Willard Full Membership Agreement contained the same or substantially the same material terms with respect to the refundability of the Membership Deposit as the afore-described Membership Agreements. Attached as **Exhibit C** is a true and correct copy of the RBF Full Golf Membership Agreement.

27.     In or about August 2008, RBF transferred Willard's $55,000 Social & Spa Membership Deposit and applied this as an initial deposit towards Willard's Full Golf Membership Deposit.

28.     On August 31, 2008, Willard executed a promissory note ("Membership Deposit Note") in favor of RBF evidencing his obligation to pay the principal sum of One Hundred Fifty Five Thousand ($155,000) plus zero percent (o%) interest, payable in ten equal consecutive annual

installments of Fifteen Thousand Five Hundred U.S. Dollars ($15,500.00), beginning on August 20, 2009. To date Willard has paid $117,000 of the Membership Deposit due under the subject contract. RBF acknowledged receipt of Willard's payments.

29.     RBF accepted the Membership Deposits paid respectively by Plaintiffs Dwyer, Hirsch, and Willard.

30.     Defendant RBF represented to Plaintiff Dwyer that RBF sold the golf club and spa assets to JGC and that JGC assumed full liability under the existing Membership Plan and each of the Plaintiffs' and Class Members' respective Membership Agreements, including the liability to refund membership deposits.

**RBF Membership Agreements and Membership Plan**

31.     The Fractional Golf Membership Agreement, Social & Spa Membership Agreement, and the Full Golf Membership Agreement contain the same refund provisions. Section III of each of these Membership Agreements, titled "Refund of Membership Deposit", states that the Membership Deposit will be refunded as follows:

(a)     <u>Members Who Resign Prior to Thirty Years:</u> A members who resigns less than 30 years after joining the Club will receive a refund when the resigned membership is reissued by the Club to a new member. The amount of the refund will be the greater of: (i) the amount of the membership deposit previously paid by the resigning member, without interest, or (ii) seventy percent (70%) of the then-current membership deposit charged by the Club to the new member acquiring the membership.

Membership Agreements, **Exhibits A, B, and C.**

32.     The Ritz-Carlton Golf Club & Spa Membership Plan (December 2002)("RBF Membership Plan"), is also uniformly applicable to Plaintiffs and all Class Members. A true and correct copy of the Membership Plan is attached as **Exhibit D**. The RBF Membership Plan restates

the same "Refund of Membership Deposit" provision found in Section III of the Membership Agreements.

33.     RBF touted the refundability of Membership Deposits as a "Special Membership Benefit" in The Ritz-Carlton Golf Club & Spa Jupiter Membership Plan (December 2002). The pertinent part of the Membership Plan states that:

- Refundable Membership Deposit. The greater of one hundred percent (100%) of the membership deposit paid by the member for a membership or seventy percent (70%) of the then current membership price is refundable upon resignation and reissuance of the membership, as provided for in this Membership Plan.

34.     Section III of the Membership Agreements provides that the refund amount due to resigning Members shall be <u>at least equal</u> to the amount of the deposit paid, if not more.

35.     Section III further states that:

The obligation to repay the membership deposit shall be subject to set-off for all amounts due under The Ritz-Carlton Golf Club & Spa, Jupiter Membership Plan and Rules and Regulations which remain unpaid on the repayment thereof. The membership deposit may be prepaid in whole or in part at any time without penalty or premium.

Membership Agreements, **Exhibits A, B, and C.**

36.     According to Section IV of the Membership Agreements, titled "Acknowledgement of Membership Rights", "In the event of termination of the Membership Plan, termination of any category of membership, recall of the membership or the discontinuance of operation of all or substantially all of the Club Facilities, the members affected will be entitled to a refund of the membership deposit paid within 30 days." **Exhibits A, B, and C.**

37.     Section IV of the Membership Agreements further states that Members "acquire a revocable license to use the Club Facilities in accordance with the terms and conditions of the Membership Plan and Rules and Regulations, as the same may be amended from time to time, and this Membership Agreement." **Exhibits A, B, and C.**

38.     The RBF Membership Plan's Transfer of Membership section has a subsection titled "Transfer of Membership to the Club" which states:

A member may transfer his or her membership only to the Club. Should a member desire to resign from the Club, the member shall be required to give written notice to the Club. The resigned membership will be placed on a waiting list and will be reissued on a first-resigned, first-reissued basis as follows:

(a) Prior to the initial sale of all of the memberships in the resigned member's category of membership, provided there is a resigned membership on the waiting list, every fifth membership issued in that category will be a resigned membership from the waiting list (the other four memberships being from the membership from the waiting list (the other four memberships being from the membership from the waiting list (the other four memberships being from the Club's unissued memberships). This procedure allows the reissuance of resigned memberships prior to the issuance of all memberships in the Club.

(b) After the initial sale of all memberships in the resigned member's category of membership, each membership issued in that category will be a resigned membership from the waiting list.

The Club will maintain separate waiting lists for the reissuance of resigned Resident Full Memberships, Resident Golf Memberships, Ritz-Carlton Club Golf Memberships and Non-Resident Full and Golf Memberships.

Membership Plan, **Exhibit D**

39.     The Membership Plan section titled "Payment of Dues by a Resigned Member" states that: "A resigned member shall be obligated to continue to pay dues, fees and other charges associated with the resigned membership until the reissuance of the membership by the Club to a new member."

**Membership Deposit Note**

40.     The Membership Deposit Note purports to "supersede any provisions of the Membership Agreement concerning payment of the deposit which are inconsistent with the terms hereof." A true and correct copy of Willard's Membership Deposit Note is attached as **Exhibit E**.

41.     The Membership Deposit Note further provides that:

Upon the resignation of the membership, Maker shall be obligated to continue to pay dues, fees and other charges associated with the resigned membership until the membership is reissued by the Club. In the event the membership is resigned prior to paying all sums due hereunder, Maker shall be required to make any additional payments due under this Note until the membership is reissued in accordance with The Ritz-Carlton Golf Club & Spa, Jupiter Membership Plan, as may be amended from time to time ("Membership Plan"). Upon the reissuance of the membership, Maker shall be entitled to repayment of the amounts actually paid towards the membership deposit, not including interest, and only the amounts paid toward the membership deposit, provided the Maker has maintained his/her membership in good standing with the Club and less any dues, fees, charges or other amounts owed the Club, and less any late fees and/or other charges due to Payee hereunder. Until all amounts due to Payee under this Note are paid in full, this provision shall supersede the provisions set forth in the Membership Plan and the Membership Agreement governing the amount due to Maker upon reissuance of the membership.

Willard Membership Deposit Note, **Exhibit E**, p. 1.

42.     The Membership Deposit Note provides a liquidated damages clause which states that:

If Maker fails to pay the installments described above as and when due, then the Club shall be entitled, in its sole and absolute discretion, to terminate Member's membership in the Club and retain, as liquidated damages and not as a penalty, all amounts previously paid by Member to Club, and shall have no obligation to refund the membership deposit or any portion thereof, notwithstanding any provisions of the Membership Plan, whereupon Maker and Payee shall be released from all liability hereunder. In the case of a default hereunder, Payee shall have such other remedies as shall be available at law or in equity.

Willard Membership Deposit Note, **Exhibit E**, p. 2.

43.     The Membership Deposit Note contains a provision that purports to allow attorney's fees and collection costs to RBF for certain work performed to collect on the note. The Membership Deposit Note provides, in pertinent part, that:

In the event that this Note is collected by law or through attorneys at law, or under advice therefrom (whether such attorneys are employees of Payee or an affiliate of Payee or are outside counsel), Maker agrees to pay all costs of collection, including reasonable attorneys' fees (including charges for paralegals and others working under the direction or supervision of the Payee's attorneys) whether or not suit is brought, and whether incurred in connection with the collection, trial, appeal, bankruptcy, or other creditors' proceedings or otherwise.

Willard Membership Deposit Note, **Exhibit E**, p. 2.

**Trump Acquires the Club**

44.    On or about December 4, 2012, JGC acquired the assets of the Club, including all Club Facilities, and assumed various RBF liabilities, including all liability to refund Membership Deposits to Plaintiffs and Class Members.

45.    *In the alternative*, if JGC did not assume full liability to refund Membership Deposits to Plaintiffs and Class Members, then RBF or its successor in interest remains liable to refund Membership Deposits pursuant to the terms and conditions of the applicable RBF Membership Agreements.

46.    RBF has represented to Plaintiffs and Class Members that JGC acquired the "Golf Club and Spa Assets" and that JGC assumed the Membership Deposit Refund liability under the operative RBF Membership Agreements.

47.    Moreover, JGC has admitted that it assumed this Membership Deposit Refund Liability.

48.    JGC acknowledged that it would "honor" the refundable membership categories issued by RBF which Plaintiffs and Class Members possess.

49.    Yet, despite these admissions and representations that JGC would refund Membership Deposits and "honor" the terms of these memberships, JGC has embarked on a systematic campaign to deny Plaintiffs and Class Members refunds and has refused to honor the agreed-upon terms and conditions of the membership categories possessed by Plaintiffs and Class Members.

50.    On or about December 4, 2012, following JGC's acquisition of the Club, JGC presented Plaintiffs and Class Members with a proposed Trump National Golf Club Jupiter

Membership Plan ("Trump Membership Plan") and a Legacy Addendum that they were to execute to "opt in." True and correct copies of the Trump Membership Plan and Legacy Addendum are attached as **Exhibit F** and **Exhibit G** respectively.

51.     The Legacy Addendum affirms JGC's liability to refund Membership Deposits to Plaintiffs and Class Members according to the "terms and conditions in the applicable Membership Agreements, this Membership Plan and the Rules, as they each may be hereafter amended from time to time."

52.     Plaintiffs and Class Members expressly rejected the respective Legacy Addendum as presented, and refused to sign it.

53.     Thereafter, Donald J. Trump, acting on behalf of Defendant JGC, declared that he would unilaterally deny the Plaintiffs and Class Members Membership rights in the Club unless they "Opted-In", signed the Legacy Addendum and effectively converted their refundable deposit into a non-refundable deposit. Trump made these statements to Plaintiffs and Class Members in a letter dated December 17, 2012. A copy of Trump's December 17th Letter is attached as **Exhibit H**. Trump represented to Plaintiffs and Class Members, active dues paying members-in-good-standing who were on the club's resignation list, that if they remained on the resignation list that he did not want them to be active members, or to use the Club Facilities, nor did he want to collect dues from them. He represented that "if a person is on the resignation list, the membership does not want them to be an active member of the club --- likewise as the owner of the club, I do not want them to utilized the club nor do I want their dues."

54.     Plaintiffs and Class Members continued their refusal to sign the Legacy Addendum for and the Club continued to both accept Plaintiffs and Class Members as members and accept their dues from December 2012, through Present.

55.     Beginning in or about December, 2012, JGC asserted that it had the unilateral right to amend the terms of Plaintiffs' and Class Members' Memberships, so as to modify or deny the right of the Plaintiffs and Class Members to receive a full refund of their membership deposits, and that it would no longer make timely refunds with regard to future resignations.

56.     Beginning in or about December, 2012, JGC terminated the Full Golf, Fractional Golf, and Social and Spa categories of membership previously offered by RBF. The "Reissuance of a Resigned Membership" section of the JGC Legacy Addendum clearly reflects that JGC terminated the **refundable** categories of membership held by Plaintiffs and Class Members, stating that "none of the memberships in the Club issued by the Club Owner [JGC] include a refundable initiation fees or refundable membership deposits. Therefore, a Refundable Membership will never be reissued." (emphasis added).

57.     Plaintiffs and some Class Members have exercised their right to suspend payments to JGC until they could determine whether JGC would continue to refuse to reinstate its refund obligations under the Membership Agreements so as to preserve their right to offset payments.

58.     Everyone in the Class defined below is however entitled to a refund. All of the operative Membership Agreements provide that if a "category" of membership is terminated, then RBF must refund deposits to members within 30 days.  JGC effectively terminated all of the existing categories of membership and replaced them with entirely new categories of membership effective with his December 17 "Opt-In" or "Opt-Out" pronouncement. This termination of membership categories triggered Trump's duty (or RBF's) to refund deposits within 30 days.

**Resignation List**

59.     On or before March 30, 2012, Plaintiff Dwyer notified RBF in writing of his decision to place his name on the Resignation List and requested the refund of his $41,000 deposit (the "Resignation Letter"). Such refund would be subject to RBF's or JGC's concurrent right to offset any unpaid charges as of the date Dwyer's membership is reissued.

60.     Notwithstanding Plaintiff Dwyer's right to remain on the resignation list, continue to pay dues, and receive a full refund of his $41,000 deposit upon the reissuance of his Membership, JGC terminated the categories of membership through Trump's December 17, 2012 letter and proposed Legacy Addendum, terminated Dwyer's Membership rights as of December 31, 2012, and has refused to refund Dwyer any of his deposit.

61.     On or about September 25, 2009, Plaintiff Hirsch notified RBF in writing of his decision to place his name on the Resignation List and requested the refund of his $55,000 deposit (the "Resignation Letter"). Such refund would be subject to RBF's or JGC's concurrent right to offset any unpaid charges as of the date Hirsch's membership is reissued.

62.     Notwithstanding Plaintiff Hirsch's right to remain on the resignation list, continue to pay dues, and receive a full refund of his $55,000 deposit upon the reissuance of his Membership, JGC terminated the categories of membership through Trump's December 17, 2012 letter and Addendum, terminated Hirsch's Membership rights as of December 31, 2012, and has refused to refund Hirsch any of his deposit.

63.     On January 6, 2009, Plaintiff Willard notified RBF in writing of his decision to place his name on the Resignation List (the "Resignation Letter"). A true and correct copy of Willard's Resignation Letter is attached as **Exhibit I**. On January 29, 2009, RBF acknowledged receipt of Willard's Resignation Letter and further acknowledged his right to a refund of the

Membership Deposit, pursuant to the Membership Agreement. A true and correct copy of Willard Resignation Acknowledgment Letter is attached as **Exhibit J.** Furthermore, RBF confirmed that Willard's membership "is still active and you may continue to enjoy the use of the Club as before." Such refund would be subject to RBF's or JGC's concurrent right to offset any unpaid charges as of the date Willard's membership is reissued.

64.     Notwithstanding Plaintiff Willard's right to remain on the resignation list, continue to pay dues, and receive a full refund of his $117,000 deposit upon the reissuance of his Membership, JGC terminated the categories of membership through Trump's December 17, 2012 letter and Addendum, terminated Willard's Membership rights, and has refused to refund Willard any of his deposit.

65.     Following JGC's unilateral termination of the Plaintiffs' and Class Members' categories of membership, JGC has continued to invoice, collect, and seek to collect the payment of ongoing dues from Plaintiffs and Class Members.

66.     Everyone in that defined class is entitled to a refund. All of the operative membership agreements provide that if a "category" of membership is terminated, then RBF must refund deposits to members within 30 days. We contend that Trump effectively terminated all of the existing categories of membership and replaced them with entirely new categories of membership effective with his December 17 "Opt-In" or "Opt-Out" pronouncement. This termination of membership categories triggered Trump's duty (or RBF's) to refund deposits within 30 days.

67.     Since January 1, 2013, JGC has denied Plaintiffs and Class Members access to any club facilities.

68.     Since January 1, 2013, JGC has continued to collect and seek to collect payment from Plaintiff Willard and Class Members of monies purportedly due under Membership Deposit Notes.

69.     The Membership Deposit Notes executed by Plaintiff Willard and other Class Members are associated with RBF Membership Agreements and a Membership Plan that allows them to have continued access and use of Club Facilities following their placement on a resignation list.

70.     The RBF Membership Agreements issued to Plaintiffs and Class Members give Plaintiffs and Class Members the right "to use the Club Facilities". The subject RBF Membership Agreements further provide that "A member only acquires a revocable license to use the Club Facilities in accordance with the terms and conditions of the Membership Plan and Rules and Regulations, as the same may be amended from time to time, and this Membership Agreement."

71.     At no time did Defendant RBF purport to amend, modify or restrict the rights of Plaintiffs and Class Members to use the Club Facilities.

72.     JGC had a duty under the terms of the subject RBF Membership Agreements, Membership Plan and the Club's rules and regulations, to allow dues paying members on the resignation list, including Plaintiffs and Class Members, continued access and use of Club Facilities.

73.     JGC has violated the terms and conditions of the subject RBF Membership Agreements by revoking Plaintiffs' and Class Members' license to use Club Facilities. Plaintiffs' and Class Members' placement on the club's resignation lists does not permit JGC to limit, restrict or prohibit Plaintiffs' or Class Members' use of Club Facilities.

74.     All conditions precedent to filing this action have occurred, been waived or performed.

## CLASS ALLEGATIONS

75.     Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure.

76.     The "Class" or group of "Class Members" Plaintiffs seek to certify is defined as follows:

> All persons who purchased a Full Golf, Fractional Golf, or Social and Spa membership from RBF to The Ritz-Carlton Golf Club & Spa, paid a Membership Deposit, have not received a full refund of their Membership Deposit, and rejected the Trump Legacy Addendum.

77.     Excluded from the Class are Defendants, any subsidiary or affiliate of the Defendants, and the directors, officers and employees of Defendants or its subsidiaries or affiliates, and members of the federal judiciary.

78.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable from Defendants' records.

### Numerosity

79.     Although Plaintiffs do not know the exact number of Class Members, Plaintiffs believe that there are hundreds of persons with club memberships who would be Class Members. The exact number of class members is easily ascertainable from the Defendants' records.  Given the nature of the claims and the number of subject memberships sold by Defendant RBF and transferred to JGC, Plaintiffs believe that the Classes are so numerous that joinder of all members of the Classes is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility

of inconsistent or varying adjudications of individual actions.  Class Members can be notified of this class action via U.S. mail at addresses that Defendants should have in its business records.

### *Commonality and Predominance*

80.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes because each Class Member's claim is derived from the same allegedly wrongful conduct and there are common liability issues which may be resolved efficiently on a class-wide basis.  Proof of a common set of facts and/or violation of law will establish the right of each member of the Classes to recover. Among the predominant questions of law and/or fact common to the Classes are:

a.     Whether Defendants RBF and/or JGC terminated any category of membership;

b.     Whether the RBF Membership Plan is uniformly applicable to Plaintiffs and Class Members;

c.     Whether the "Refund of Membership Deposit" provisions of the RBF Membership Agreements are uniformly applicable to Plaintiffs and Class Members;

d.     Whether Defendants RBF and/or JGC are liable to Plaintiffs and Class Members to refund Membership Deposits;

e.     Whether Defendants RBF and/or JGC are liable to Plaintiffs and Class Members for actual damages;

f.     Whether Defendants RBF and/or JGC have properly reissued resigned memberships and refunded Membership Deposits pursuant to the applicable terms of the RBF Membership Agreements and RBF Membership Plan;

g.      Whether Plaintiffs and Class Members are liable to Defendants to pay on-going dues;

h.      Whether Plaintiffs and Class Members are liable to Defendant to pay unpaid balances on Membership Deposit Notes; and

i.      Whether Plaintiffs and Class Members are entitled to injunctive relief.

**Typicality**

81.      Plaintiff Dwyer, Hirsch, and Willard's respective claims are typical of other Class Members because they, like other Class Members, purchased Fractional Golf, Social & Spa, or Full Golf memberships from RBF and paid Membership Deposits that are refundable pursuant to the common terms of their Membership Agreements.

**Adequacy of Representation**

82.      Plaintiffs Matthew Dwyer, Norman Hirsch, and Willard are representatives of the Class defined above.

83.      Plaintiffs Dwyer, Hirsch and Willard will fairly and adequately protect the interests of the Class they represent because it is in its best interests to prosecute the claims alleged herein to obtain full redress due to it for the illegal conduct of which they complain.  Plaintiffs have no interests which conflict with those of the members of the Class because one or more questions of law and/or fact regarding one or more of the Defendant's liability are common to all Class Members and predominate over any individual issues that may exist, such that by prevailing on its own claims, Plaintiffs necessarily will establish on or more of the Defendant's liability to other Class Members.

84.      Plaintiffs have retained counsel who are experienced in litigating complex class actions.  Plaintiffs' counsel are long-standing members of the Florida Bar, whose practices focus

on consumer and class litigation.  Counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class defined above.

*Superiority*

85.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because:

a.      Joinder of all Class Members is impracticable;

b.      The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class Member's rights and the disposition of their interests through actions to which they were not parties;

c.      Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender;

d.      Absent a class action, Class Members will continue to suffer losses and be aggrieved and Defendants will continue to violate Florida law without remedy;

e.      Class treatment of this action will cause an orderly and expeditious administration of class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured;

f.      Plaintiff and its counsel are unaware of any class action brought against any Defendant for the violations alleged in this action;

g.      The forum is desirable because the Club is situated in this District and Defendants conduct their business here; and,

       h.     This action presents no difficulty that would impede its management by the Court as a class action.

***Class-Wide Injunction and Declaration***

86.     Plaintiffs seek injunctive and declaratory relief on behalf of Class Members on grounds generally applicable to the entire Class Members in order to enjoin and prevent Defendants RBF and JGC from continuing to breach the subject agreements with Plaintiffs and Class Members and to declare their collective rights under those agreements.

87.     Because Plaintiffs seek injunctive and declaratory relief for Class Members, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the Defendants. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

88.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

89.     All conditions precedent to the filing of this action, if any, have been performed, waived, satisfied or otherwise executed.

<u>**COUNT I**</u>
<u>**DECLARATORY JUDGMENT**</u>

90.     Plaintiffs incorporate and reallege all allegations contained in paragraphs 1 – 87 as though fully set forth herein.

91.     This is an action pursuant to 28 U.S.C. § 2201(a) for a declaratory judgment and supplemental relief against Defendants RBF and JGC.

92.     JGC has stated that it has the unilateral right to amend the refund policy and thereby eliminate its liability to refund Membership Deposits to Plaintiffs and Class Members.

93.     JGC's interpretation ignores the clear language of the subject Membership Agreements, drafted by RBC, signed by Plaintiffs, Class Members, and RBC, which established the Plaintiffs' and Class Members' absolute right to a full refund of their deposit, upon the Club's termination of any category of membership.

94.     JGC assumed the liability arising under the subject Membership Agreements, to refund Membership Deposits upon the termination of any category of membership.

95.     Alternatively, if JGC did not assume this liability that arises under the RBF Membership Agreements, then RBF or its successor in interest remains liable to refund Membership Deposits pursuant to the terms of the subject Membership Agreements.

96.     Further, if the subject Membership Agreements are interpreted in a way that allows JGC to unilaterally change any provision in the Membership Agreements, including the refund policy, by amending the Membership Agreement, Membership Plan and/or Rules and Regulations at its sole and exclusive discretion, the subject Membership Agreements would be illusory, and, thus, unenforceable.

97.     JGC has acted towards Plaintiffs and Class Members in ways that are inconsistent with the subject Membership Agreements, Membership Plan and the parties prior course of dealing. The subject Membership Agreements, Membership Plan, and the parties' prior course of dealing all reflect that JGC's termination of Plaintiffs' and Class Members' categories of membership would likewise terminate any further liability by Plaintiff Willard and Class Members to make payments under Membership Deposit Notes.

98.     Likewise, JGC's revocation of Plaintiffs' and Class Members' right to use Club Facilities

99.     The parties do not agree regarding the appropriate interpretation and application of these provisions.

100.    Plaintiffs and Class Members are in doubt as to their rights and privileges with respect to the Membership Agreements and are entitled to have such doubt removed.

101.    There is a bona fide, actual, present, and practical need for a declaration of the rights of the parties with respect to the Membership Agreements, as described above.

WHEREFORE, Plaintiffs request that the Court enter a declaratory judgment as to the parties' respective rights and obligations regarding the Membership Agreements, and award such other and further relief as it deems appropriate.

## COUNT II
## BREACH OF CONTRACT
## RBF LLC and JUPITER GOLF CLUB LLC

102.    Plaintiffs incorporate and reallege all allegations contained in paragraphs 1 – 87 as though fully set forth herein.

103.    Under the terms of the subject Membership Agreements, RBF and JGC owe Plaintiffs and Class Members the full amount of their respective membership deposits within thirty days of JGC's termination of the membership categories offered by RBF.

104.    RBF and JGC have breached the subject Membership Agreements by failing and/or refusing to refund Membership Deposits to Plaintiffs and Class Members.

105.    JGC has also breached the subject Membership Agreements and/or Membership Plans by attempting to unilaterally and unreasonably alter material terms of the Membership Agreement and Membership Plan, namely, the membership refund policy.

106.     Plaintiffs and Class Members have performed their obligations required by law under the subject Membership Agreements and/or Membership Plans.

107.     As a direct and proximate result of Defendants' failure to refund the membership deposits pursuant to the subject Membership Agreements, Plaintiffs and Class Members have been damaged.

## COUNT III
## INJUNCTIVE RELIEF

108.     Plaintiffs incorporate and reallege all allegations contained in paragraphs 1 – 87 and 103-107 as though fully set forth herein.

109.     Count III is brought on behalf of Plaintiffs and Class Members under Rule 23(b)(3).

110.     Plaintiffs and Class Members have a legal right under RBF's standardized uniform Membership Agreements to receive a refund of Membership Deposits paid within thirty days of the termination of any category of membership. In addition, based upon Defendants' breach of the standardized uniform Membership Agreements and termination of Plaintiffs' and Class Members categories of membership, Defendants possess no legal rights to collect or attempt to collect ongoing dues or payments under the standardized and uniform Membership Deposit Notes.

111.     Defendants RBF and JGC have failed and refused to refund Membership Deposits to Plaintiffs or Class Members.

112.     Likewise, Defendants RBF and JGC have continued to collect and seek to collect ongoing dues from Plaintiffs and Class Members.

113.     Defendants RBF and JGC have continued to collect and seek to collect payments under the standardized and uniform Membership Deposit Notes from Plaintiff Willard and Class Members.

114.     As a consequence, Defendants RBF and JGC have violated and continue to violate one or more cognizable legal rights of Plaintiffs and Class Members.

115.     Defendants RBF and JGC continue to retain monies due and owing Plaintiffs and Class Members, including refundable Membership Deposits, ongoing dues, and payments of Membership Deposit Notes, and unless enjoined by this Court will continue to retain such monies.

116.     Plaintiffs and Class Members have no adequate remedy at law by virtue of Defendants' on-going course of conduct.

117.     Irreparable injury will be suffered unless an injunction issues to prevent Defendants RBF and JGC from continuing to retain monies due and owing Plaintiffs and Class Members, including refundable Membership Deposits, ongoing dues, and payments of Membership Deposit Notes, and to provide notice to Class Members about their rights.

118.     Any potential injury to Defendants attributable to an injunction along the lines set forth in the preceding paragraph is outweighed by the injury that Plaintiffs and Class Members will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and Class members, respectfully request this Court enter a judgment against Defendants RBF and JGC and in favor of Plaintiffs, and grant the following relief:

(A)      Certification of the Class alleged above pursuant to Rule 23 (b) (3) and Rule 23(b) (2) of the Federal Rules of Civil Procedure, certifying Plaintiffs as representatives of the Class and designating their counsel as counsel for the Class;

(B)      Creation of a common fund of actual damages to be paid to Plaintiffs and all Class Members alleged above for Defendants' breach of contract;

(C)      An order enjoining Defendants RBF and JGC from continuing their respective illegal conduct;

(D)      Pre-judgment and post-judgment interest;

(E)      An order awarding Plaintiffs and class members reasonable attorneys' fees, pursuant to Florida Statute §57.105(7) or otherwise based in law or equity, and costs of suit, including expert witness fees; and

(F)      Such other and further relief as the Court may deem necessary or appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  August 19, 2015                              Respectfully submitted,

By: */s/ Seth M. Lehrman*
Steven R. Jaffe (FBN 390770)
E-mail: steve@pathtojustice.com
Mark S. Fistos (FBN 909191)
E-mail: mark@pathtojustice.com
Seth M. Lehrman (FBN 132896)
E-mail: seth@pathtojustice.com
**FARMER, JAFFE, WEISSING,**
**EDWARDS, FISTOS & LEHRMAN, P.L.**
425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
Telephone 954-524-2820
Facsimile 954-524-2822

*Attorneys for Plaintiffs and Class Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

      I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court's CM/ECF system on August 19, 2015, and will be served on all counsel of record listed below through the ECF system.


                    */s/ Seth M. Lehrman*
                    Seth M. Lehrman


<u>**SERVICE LIST**</u>
***Hirsch et al v. Jupiter Golf Club LLC et al***
**CASE NO. 13-80456-CIV-KAM**
**United States District Court in the Southern District of Florida, Palm Beach Division**

Herman J. Russomanno (Fla. Bar No. 240346)
E-mail: hrussomanno@russomanno.com
Robert J. Borrello (Fla. Bar No. 764485)
E-mail: rborrello@russomanno.com
Herman J. Russomanno III (Fla. Bar No. 21249)
E-mail: herman2@russomanno.com
RUSSOMANNO & BORRELLO, P.A.
Museum Tower, Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103
*Attorneys for Defendant Jupiter Golf Club, LLC*
*d/b/a Trump National Golf Club Jupiter*


Jerry R. Linscott (Fla. Bar No. 148009)
E-mail: jlinscott@bakerlaw.com
Julie Singer Brady (Fla. Bar No. 0389315)
E-mail: jsingerbrady@bakerlaw.com
Salomon Laguerre (Fla. Bar No. 092470)
E-mail: slaguerre@bakerlaw.com
P. Alexander Quimby (Fla. Bar No. 099954)
E-mail: aquimby@bakerlaw.com
Brian E. Smith (Fla. Bar No. 042316)
E-mail: bsmith@bakerlaw.com
BAKER & HOSTETLER LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802

Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Attorneys for Defendant RBF, LLC*
*d/b/a The Ritz-Carlton Golf Club & Spa Jupiter*