**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**

**CASE NO. 13-80456-CIV-KAM**

NORMAN HIRSCH, MATTHEW DWYER,
and RALPH WILLARD, individually
and on behalf of all others similarly situated,

       Plaintiffs,

v.

JUPITER GOLF CLUB LLC, a Delaware
LLC d/b/a TRUMP NATIONAL GOLF
CLUB JUPITER and RBF, LLC d/b/a
THE RITZ-CARLTON GOLF CLUB &
SPA JUPITER,

       Defendants.

_____/

**CLASS COUNSEL'S AMENDED MOTION AND MEMORANDUM OF LAW**
**REQUESTING THE COURT GRANT CLASS COUNSEL'S REQUEST FOR**
**ATTORNEYS' FEES, NONTAXABLE COSTS, AND INCENTIVE AWARDS TO CLASS**
**REPRESENTATIVES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

I. PRELIMINARY STATEMENT ................................................................................. 1

II. ARGUMENT ............................................................................................................ 2

    **A.**   **The Three-Prong Analysis of Class Counsel's Request for Attorney's Fees** ................ 2

    **B.**   **Rule 23(h) and the Common Fund Doctrine Entitle Class Counsel to an Award of Attorney's Fees from the Common Fund They Won for the Class.** ........................ 3

        1. Federal Rule of Civil Procedure 23(h). ............................................................... 3

        2. The Common Fund Doctrine. ............................................................................... 5

        3. *Camden I.* ............................................................................................................ 6

    **C.**   **Under *Camden I*, Class Counsel are Entitled to Attorney's Fees Calculated as a Percentage of the Common Fund They Won for the Class.** ................................... 7

    **D.**   **Class Counsel's Request for 31% of the Fund is Reasonable Under the *Camden I* Benchmark and the *Johnson Factors*.** .......................................................... 8

        1. The Eleventh Circuit Benchmark ....................................................................... 8

        2. The *Johnson Factors*. ......................................................................................... 9

            a.   Outstanding Result .................................................................................. 10

            b.   Customary Awards in Other Cases ........................................................... 11

            c.   Risk, Difficulty, and Undesirability ........................................................ 12

                i.     *Inherent Risk.* ................................................................................ 12

                ii.    *Difficulty and Undesirability* ........................................................ 13

                iii.   *Marketplace for Contingent Fee Contracts* ................................... 13

            d.   Experience and Skill of Class Counsel .................................................... 15

            e.   Labor Involved ........................................................................................ 15

                i.     *Case Investigation and Pleadings* ................................................. 15

                 ii.    *Extensive Discovery* ...................................................................... 16

                iii.   *Winning Class Certification* .......................................................... 17

                iv.   *Successfully Rebutting Summary Judgment* .................................. 18

                v.    *Prevailing at Trial and Winning Final Judgment* .......................... 18

    **E.**   **Class Counsel are Entitled to Nontaxable Costs.** ......................................... 19

        1. Basis and Entitlement. ........................................................................................ 19

        2. Reasonableness. ................................................................................................. 20

    **F.**   **Named Plaintiffs are Entitled to Incentive Awards.** ...................................... 21

        1. Precedent. ........................................................................................................... 22

2. The Source. ................................................................................................... 22

3. The Analysis. ................................................................................................ 23

    a. Extensive Involvement ............................................................................ 23

    b.  Risk ......................................................................................................... 24

    c. Current and Future Results....................................................................... 24

    d. Awards in Other Cases.............................................................................. 25

**III.  CONCLUSION** .......................................................................................... 26

**L.R. 7.1(a)(3) CERTIFICATION** ................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................. passim

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ........................................ 19

*Bakalor v. Integrated Communication Network, Inc.*, 96-2021-CIV-KING (S.D.Fla.1997) ....... 12

*Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) aff'd., 899 F. 2d 21 (11th Cir. 1990) ...................................................................................................................................... 10, 12

*Bobbitt v. Acad. of Court Reporting, Inc.*, No. 07-10742, 2009 WL 3336085 (E.D. Mich. Oct. 15, 2009) .................................................................................................................................................. 4

*Boeing Co. v. Van Gemert 444 U.S. 472 (1980)* ............................................................................ 5, 6

*Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ..................................................................................................................................................... 22

*Calloway v. Cash Am. Net of California LLC*, No. 09-CV-04858 RS, 2011 WL 1467356 (N.D. Cal. Apr. 12, 2011) ........................................................................................................................... 4

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ........................... 1, 6, 8, 10

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) .............................................................. 1

*Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998) ......................................................................... 23

*Curry v. AvMed, Inc., No.* 10-CV-24513-JLK, 2014 WL 7801286 (S.D. Fla. Feb. 28, 2014)..... 22

*Diakos v. HSS Sys., LLC,* No. CV 14-61784-CIV, 2016 WL 3702698 (S.D. Fla. Feb. 5, 2016) . 11, 22

*Dowdell v. City of Apopka, Florida,* 698 F.2d 1181 (11th Cir. 1983) ........................................... 21

*E.E.O.C. v. W. Customer Mgmt. Grp., LLC,* No. 3:10CV378/MCR/CJK, 2015 WL 3750138 (N.D. Fla. June 15, 2015)................................................................................................................ 21

*Ehrenreich v. Sensormatic Elecs. Corp.*, 95-6637-CIV-ZLOCH (S.D.Fla.1998)...................... 12

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D.Ohio 1991) .................................................................................................................................................. 22, 24

*Feldkamp v. Long Bay Partners, LLC,* 773 F. Supp. 2d 1273 (M.D. Fla. 2011)........................ 13

*Florida Keys Citizens Coalition, Inc. v. U.S. Army Corps of Engineers,* 386 F. Supp. 2d 1266 (S.D. Fla. 2005)................................................................................................................................ 20

*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)................................................................................................................................ 3, 11

*Frank v. Poertner,* 136 S. Ct. 1453 (2016) ..................................................................................... 6

*Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)... 6, 11, 23, 25

*Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir.2000)....................................... 8

*Golden v. U.S. Diagnostics, Inc.*, 97-8010-CIV-GOLD (S.D.Fla.1998)..................................... 12

*Hawthorne v. Umpqua Bank*, 2015 WL 1927342 (N.D. Cal. 2015) ......................................... 20

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) .............................................................................. 8, 10

*In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 3145111 (S.D.N.Y. Oct. 26, 2007) .............................................................................................................................. 23

*In re Catfish Antitrust Litig.*, 939 F.Supp. 493 (N.D.Miss.1996) ............................................. 22

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .............. 8, 9, 12

*In re CHS Elecs., Inc. Sec. Litig.*, 99-8186-CIV-GOLD (S.D.Fla.2002)...................................... 12

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D.La.1997)......................................................... 14

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ........................................... 12, 14

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ............................ 23

*In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366 (S.D.Ohio 1990) ........... 22

*In re Friedman's, Inc. Sec. Litig.*, No. 1:03-CV-3475WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ...................................................................................................................... 11

*In re Gould Sec. Litig.*, 727 F. Supp. 1201 (N.D. Ill. 1989) ..................................................... 5

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) ................................. 11, 23

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ............................ 5

*In re Perfumania, Inc. Sec. Litig.*, 92-1490-CIV-MARCUS (S.D.Fla.1993) ............................ 12

*In re Quantum Health Resources Inc.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ............................. 12

*In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass. Apr. 9, 2004) ............................ 11

*In re RJR Nabisco Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984 (S.D.N.Y.1973) ...................................................................................................................... 14

*In re Royce Labs, Inc. Sec. Litig.*, 92-0923-CIV-MOORE (S.D.Fla.1993) ............................... 12

*In re Sunbeam*, 176 F.Supp.2d 1323 (S.D. Fla. 2001). ................................................ 9, 10, 11, 12

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................................. 24

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137 (D. Me. Feb. 10, 2016) ......... 25

*In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D.Fla. Oct. 24, 2003) ...................................................................................................................... 11

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ............................................. 23

*Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ...................................................................................................................... 10

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................. 2

*Kurt S. Soto v. The Gallup Organization, Inc*, No 0:13-cv-61747-CIV, ECF No. 95 (S.D. Fla. Nov. 15, 2015) ...................................................................................................................... 11

*Leslie v. Conseco Life Ins. Co.*, No. 9:11-CV-81035-KAM, 2014 WL 12479931 (S.D. Fla. July 25, 2014) ...................................................................................................................... 22

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d. 766 (N.D. Ohio 2010) .............................. 23

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) .. 7

*Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713 (S.D.W. Va. 2009) ...................................................................................................................... 25

*Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-CIV, 2013 WL 12086769 (S.D. Fla. Nov. 20, 2013) ..................................................................................................... 21

*McClelland v. HSBC Retail Servs., Inc.*, No. 208-CV-708-FTM-29DNF, 2011 WL 32423 (M.D. Fla. Jan. 5, 2011) ...................................................................................................................... 21

*McDaniels v. Westlake Servs., LLC*, No. CIV.A. ELH-11-1837, 2014 WL 556288  (D. Md. Feb. 7, 2014) ...................................................................................................................... 4

*Montoya v. PNC Bank, N.A.*, No. 1420474-CIV GOODMAN, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) ...................................................................................................... 8, 11, 23

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................... 11, 14

*Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015) ................................................... 6

*Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737 (E.D. Mich. 2014) .............. 20

*Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013) ..................... 22

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) ......................................................... 12

*Reyes, et al. v. AT&T Mobility Services, LLC*, No. 10-20837-CIV, DE 196 ............................... 11

*Sands Point Partners, L.P. v. Pediatrix Med. Grp., Inc.*, No. 99-6181-CIV, 2002 WL 34343944
(S.D. Fla. May 3, 2002) ................................................................................................. 12
*Silver v. Sensormatic*, 93-8619-CIV-MARCUS (S.D.Fla.1996) ................................................ 12
*Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. 2012) ...................... 4
*Smith v. Casey*, No. 12-23795-CIV, 2013 WL 12064518 (S.D. Fla. July 26, 2013).................... 20
*Sprague v. Ticonic Nat. Bank*, 307 U.S. 161 (1939)............................................................ 2, 19
*Suzuki Motor Corp.*, 2010 WL 1628362............................................................................. 8
*Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C.Cir.1993) .................................................. 7
*Tapken v. Brown,* 90-0691-CIV-MARCUS (S.D.Fla.1995)....................................................... 12
*Trustees v. Greenough,* 105 U.S. 527 (1881) ....................................................................... 1
*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .................................... 23
*Vaszlavik v. Storage Corp*., No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000)............. 9
*Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468 (S.D. Fla. 1997) ....................................... 10, 15
*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999)....................................... 9
*Wilson v. Airborne, Inc*., No. EDCV 07–770–VAP (OPx), 2008 WL 3854963 (C.D.Cal. Aug. 13,
2008) .................................................................................................................... 24
*Wilson v. EverBank,* No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016)............. 11, 22
*Wolff v. Cash 4 Titles,* No. 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)....... 9, 11


**Other Authorities**
21 Am. Juris. Trials 625: *Preparation and Trial of Federal Class Actions* (2009) ..................... 10
Comments to 2003 Amendments, Rule 23, Subdivision (h) ...................................................... 4
Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, § II A, p. 69 (3d
ed. 2015) ................................................................................................................. 3, 10
*Newberg on Class Actions* (4th ed. 2002).................................................................................. 8
*Newberg on Class Actions* (5th ed.).............................................................................. passim
Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An
Empirical Study,* 53 UCLA L. REV. 1303, 1310 (2006)...................................................... 25


**Rules**
Federal Rule Civil Procedure 23(h) ..................................................................... 1, 2, 3, 19
Federal Rule of Civil Procedure 54(d)(2) ................................................................................ 4

In this Motion and supporting Memorandum, under Federal Rule Civil Procedure 23(h) and the common law of this Circuit, counsel for named Plaintiffs and the Class ("Class Counsel") request that this Court award them 31% ($1,789,943) of the $5,774,010 common fund that the Court awarded the Class in its final judgment entered February 1, 2017 (DE 265). They also request nontaxable costs from the fund totaling $29,040.24 and incentive awards of $2000 to each named Plaintiff, and by separate motion, they request that a third notice be sent to the Class.  In support, Class Counsel state:

## I. PRELIMINARY STATEMENT

To be awarded a reasonable fee, a litigant must satisfy a three-pronged analysis: First, she must demonstrate her entitlement to a fee award; second, she must demonstrate how the award should be calculated; and third, she must demonstrate quantitatively and qualitatively that the amount requested is reasonable.

Class Counsel satisfy all three of these criteria.

Under the *first* prong, Class Counsel's entitlement for reasonable attorney's fees is firmly grounded in the Federal Rules of Civil Procedure and long-standing precedents. Rule 23(h) expressly authorizes the Court to award "reasonable attorney fees and nontaxable costs *authorized by law*." (emphasis added).  Consistent with this, long-standing federal law indeed authorizes an award to Class Counsel because they created an identifiable common fund for the benefit of an identifiable class.   Since at least 1882, the Supreme Court has held that creation of a common fund entitles counsel to an award of attorney's fees from the fund created. *See Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough,* 105 U.S. 527 (1881).

Regarding the *second* and *third* prongs, over twenty-five years ago, following this federal precedent, the Eleventh Circuit mandated how fees were to be calculated, holding categorically "in this circuit, attorneys' fees awarded from a common fund ***shall be*** based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (emphasis added). Since that time, courts in this District and elsewhere have consistently followed *Camden I*, calculating attorney's fees based on percentages anywhere from 20% to an upper limit of 50% of the fund, confirming reasonableness of the percentage requested qualitatively and quantitatively based on the circumstances of the case, and based on a series of factors reiterated in *Camden I*—commonly called the "*Johnson Factors*."

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

As detailed below, based on the long-standing precedent cited throughout this Motion, Class Counsel squarely meet all three prongs of the fee analysis.  After over three years of contentious litigation and Class Counsel's extensive work, this Court entered a judgment for Plaintiffs and the Class for a total fund of $5,774,010, accruing to all Class Members' benefit (DE 265).  Under the procedures spelled out in Rule 23(h), the common fund doctrine adopted in this Circuit entitles them to a fee award from the $5,774,010.00 common fund they won for the Class, calculated as a percentage of the fund.  Rule 23(h) is also satisfied because Class Counsel timely filed this Motion and separately request that a third notice be provided to the Class of Class Counsel's fee request and that the Court set a deadline to object to the request well before the Court hears and decides this Motion.

Moreover, the percentage Class Counsel request—31% ($1,789,943) of the fund—falls well within the reasonable benchmark range identified in *Camden I* and its progeny; and considering their hard work and results in creating a fund for the Class and other factors reiterated in *Camden I,* Class Counsel's request for 31% of the class judgment is reasonable.

Furthermore, Rule 23(h) permits litigants (if authorized by law) to recover nontaxable costs.  The same equitable rationale for allowing awards of attorney's fees from a common fund allows a litigant to recover nontaxable costs from a fund she created for the benefit of others. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166 (1939).  Finally, because the named Plaintiffs voluntarily represented the Class, took palpable risks, and actively participated for three years in the prosecution of the case yielding an extraordinary result, the Court, under class-action law in this District and elsewhere, is justified in awarding them incentive awards of a modest sum of $2000 each.

As detailed below, the Court should honor Class Counsel's request for attorney's fees, nontaxable costs, and incentive awards unequivocally.

## II. ARGUMENT

### A.  The Three-Prong Analysis of Class Counsel's Request for Attorney's Fees

There is no fee-shifting statute or agreement involved here.   Because the Court certified this breach of contract case as class action and entered a money judgment for the Class, Class

Counsel's entitlement to attorney's fees is founded on Rule 23 jurisprudence and common law relating to common funds.

The Court's determination of a reasonable fee is a three-three prong analysis: **First**, the court must discern what entitles the movant to fees. **Second**, the Court must decide how the award should be calculated. And **third**, the Court must decide quantitatively and qualitatively whether the amount requested is reasonable measured against multiple factors tailored to the marketplace for fees and circumstances of a given case. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at \*13 (S.D. Fla. Jan. 31, 2008); *see also* Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, § II A, p. 69 (3d ed. 2015).

Below, Class Counsel demonstrate that they are entitled to a fee award under Rule 23(h), which dictates the procedures to be followed for fee and nontaxable cost requests in class actions and states a substantive element, permitting that the Court award fees "authorized by law." Applying the common fund doctrine, Class Counsel also show that their fees are properly calculated as a percentage of the fund; and that the percentage of the fund they seek—31%—is reasonable under the circumstances of the case.

### B. Rule 23(h) and the Common Fund Doctrine Entitle Class Counsel to an Award of Attorney's Fees from the Common Fund They Won for the Class.

#### 1. Federal Rule of Civil Procedure 23(h).

Rule 23(h), borrowing from applicable portions of Rule 54(d)(2), sets out the procedure that counsel must follow to be entitled to attorney's fees. *See Newberg on Class Actions*, §§ 15:2, 15:10, 15.18 (5th ed.) The Rule also acknowledges a substantive component, in relevant part, stating that "[i]n a certified class action, the *court may award reasonable attorney's fees* and nontaxable costs that are *authorized by law.*" Fed. R. Civ. P. 23(h) (emphasis added).

The Rule sets forth "[t]he … procedures [that] apply" to fee requests including, among other things,

- that the applicant request fees by motion under Rule 54(d)(2);[1]

- that notice of the request directed to class members;

- that class members and parties be allowed to object to the fee request; and,

---

[1] *See* Fed. R. Civ. P. 23(h)(1) ("A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets.").

- that the court may hold a hearing or refer to the request to the magistrate or special master if the court finds it appropriate.

Federal Rule of Civil Procedure 54(d)(2) in turn further specifies that the motion be filed within that 14 days after the entry of judgment;[2] and that the motion specify the grounds for the fees requested.

Class Counsel have met the procedural requirements of Rules 23(h) (and the relevant portions of Rule 54(d)(2) incorporated in the Rule): They timely filed their Motion[3] and thoroughly specify throughout the grounds for and amount of their requested fees. The Court-approved class certification notice Plaintiffs disseminated twice advised Class Members that Class Counsel may request fees and expenses deducted from monies awarded to the Class (DE 125-1 at 6-7 of 7; DE 181). Class Counsel have also separately filed a motion requesting approval of an additional notice to advise Class Members about their current request and their rights to object.

Also, in the motion attaching the proposed notice they also request that any hearing and determination of Class Counsel's fees occur well after the deadline for Class Members to submit objections, so that the Court will have that information before ruling, and Class Members will have ample time to lodge any objections. *See Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. 2012) (finding class members had an "adequate opportunity to object to the motion itself," because it was filed two weeks before the objection deadline).

---

[2] Class Counsel are aware of Southern District of Florida Local Rule 7.3, but found no case law interpreting Rule 7.3 considering the specific requirements of Rule 23(h), Rule 54(d)(2), and the common fund doctrine.  Not finding any case law on the issue, Class Counsel have adhered to the time frames and procedures of Rule 23(h) and common law, because they specifically address class action fee awards and have in the case of Rule 54, more stringent time frames. *See* Comments to 2003 Amendments, Rule 23, Subdivision (h); *see also Calloway v. Cash Am. Net of California LLC*, No. 09-CV-04858 RS, 2011 WL 1467356, at *1 (N.D. Cal. Apr. 12, 2011) ("Rule 23(h) governs the award of attorneys' fees and costs in certified class actions."); *Bobbitt v. Acad. of Court Reporting, Inc.*, No. 07-10742, 2009 WL 3336085, at *1 (E.D. Mich. Oct. 15, 2009) ("Rule 23 governs for the award of attorney's fees to class counsel."); *McDaniels v. Westlake Servs., LLC*, No. CIV.A. ELH-11-1837, 2014 WL 556288, at *13 (D. Md. Feb. 7, 2014) ("Federal Rule of Civil Procedure 23(h), *which governs attorneys' fees in the class action context,* provides that a court may award 'reasonable' attorneys' fees. ") (emphasis added).

[3] The Court entered a final judgment upon which this Motion is based on February 1, 2017 (DE 265).  Plaintiff filed their Motion within 14 days on February 15, 2017. *See* Fed. R. Civ. P. 54 (d)(2)(B)(i).

Rule 23(h)'s threshold procedural requirements are thus satisfied, entitling Class Counsel to fees provided they show the substantive part of the equation—that their request is "authorized by law." Here, Class Counsel's request is "authorized by law" consistent with Rule 23(h), because, under long-standing federal law,[4] they created an identifiable common fund of $5,774,010.00 for the benefit of an identifiable class.

### 2. The Common Fund Doctrine.

The common fund doctrine is supported by long-standing federal precedent. "[T]he United States Supreme Court has, since 1882, repeatedly recognized that, where counsel secures a 'common fund' for the benefit of a class, counsel is entitled to be compensated from the funds recovered." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) (collecting cases). The basis for this entitlement is grounded in equity and based on the perception that those who benefit from the prosecution of a lawsuit will be unjustly enriched if they do not share the costs in direct proportion to the benefit each receives. *See Boeing,* 444 U.S. 472, 478. The common fund doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).

In this vein, entitlement to the fund makes all class members beneficiaries for the purposes of the common fund doctrine. *Boeing,* at 479-482. Although the full value of the benefit to each absentee member cannot be determined until he presents his or her claim, a fee awarded against the entire judgment fund appropriately shifts the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery. *Id.* Attorney's fee requests are therefore properly based on gross amount of fund, irrespective of amounts class members actually claimed *see Waters*, 190 F.3d 1291, 1296 (citing *Boeing*); *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (trial court properly calculated "the fee award as a percentage of the total…fund, including notice and administrative costs, and litigation expenses").

---

[4] Federal not Florida law applies here. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) ("The district court presiding over a diversity-based class action pursuant to Fed.R.Civ.P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law.").

**3.** *Camden I.*

In 1991,[5] the Eleventh Circuit in *Camden I,* 946 F.2d 768, following *Boeing* and other historic case law, squarely established the common fund doctrine as the law in this Circuit.   "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Gevaerts*, 2015 WL 6751061, at *10) (citing *Sunbeam*, 176 F. Supp. 2d at 1333; *Boeing*, 444 U.S. at 478; and *Camden I*, 946 F.2d at 771).  The law in this Circuit is thus that, subject to court approval, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund." *Camden I*, 946 F.2d at 771.   "[W]hen a [class] representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained."  *Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citing *Camden I,* 946 F.2d at 771; and *Boeing*, 444 U.S. at 478)).

The upshot of the foregoing is that, subject to court approval, in this Circuit attorneys are as a matter of substantive law entitled to attorney's fees from a common fund they bring about. The only two prerequisites are: first, identifiable persons whom the court has certified as members of the class; and second, a final judgment (or settlement) fixing the total amount of damages from which class members would receive their shares.  *See Boeing*, at 479.

In this case, Class Counsel has satisfied both substantive requirements. The Court has certified an identifiable Class; and as the result of Class Counsel's three years of hard work stated below (Section II.D.2.e), the Court entered a judgment after trial, creating an identifiable fund of $5,774,010.00 for their aggregate and common benefit.  Each Class Member, whether or she has received any money from the fund, now has a claim from the fund commensurate with his or her deposit refund. *See* DE 227 at ¶ 5) (stipulation to identities and refunds of Class Members); DE 263 at 20 of 22 (stating "Plaintiffs and the Class Members' damages measured by the amounts of their refundable deposits plus accruing interest;" and DE 263 at 21 of 22 (adjudging that Defendant is indebted to Class Members "in the *aggregate* principal sum of $4,849,000.00") (emphasis added).  Under *Boeing*, *Camden I,* and the long-standing law of the District, Class Counsel have

---

[5] The most recent Eleventh Circuit reaffirmation of *Camden I's* mandate Class Counsel found was *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015), cert. denied sub nom. *Frank v. Poertner*, 136 S. Ct. 1453 (2016).

established entitlement to fees—in this case, they are entitled to attorney's fees from this common fund.  The first prong of the fee analysis—entitlement to a fee award —is thus satisfied.

**C. Under *Camden I,* Class Counsel are Entitled to Attorney's Fees Calculated as a Percentage of the Common Fund They Won for the Class.**

Likewise, Class Counsel satisfy the second analytical prong—regarding how fees should be calculated.  In adopting the common fund doctrine, the Eleventh Circuit analyzed both the lodestar and common fund approaches to calculating awarding fees in class actions and held that awarding fees from the common fund rather than based on lodestar is the better reasoned approach, criticizing the lodestar method and the inefficiencies that it creates. 946 F.2d at 773–75.  It discerned that the common fund approach more closely aligns the interests of client and attorney and more faithfully adheres to market practice.  *Id*. at 774; *accord Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011) ("Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i. e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner.");  *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1266–67 & n.3, 1269–71 (D.C.Cir.1993) (noting that the lodestar approach "encourages significant elements of inefficiency,"  by giving attorneys an "incentive to spend as many hours as possible" and "a strong incentive against early settlement;"  the percentage approach "more accurately reflects the economics of litigation practice," and "the monetary amount of the victory is often the true measure of success, and therefore it is most efficient that it influence the fee award;" accordingly, "we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases").

Owing to its critical analysis of the lodestar methodology of calculating attorney's fees, in *Camden I*, the Eleventh Circuit categorically held that, "henceforth, in this circuit, attorneys' fees awarded from a common fund ***shall be*** based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774.  Consistent with this mandate, judges in this District and others, and commentators, interpret *Camden I* to mean: (1) that calculating fees as "percentage of the fund is the exclusive method for awarding fees in common fund class actions;" and that (2) the lodestar approach should not be imposed in common fund cases, even indirectly, for example,

through the back door via a lodestar "cross-check."[6]   *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011)(analyzing and interpreting *Camden I*, 946 F.2d at 774, and rejecting lodestar crosscheck) (emphasis added); *Montoya v. PNC Bank, N.A.*, No. 1420474-CIV GOODMAN, 2016 WL 1529902, at *16 (S.D. Fla. Apr. 13, 2016), appeal dismissed (July 11, 2016) (citing and following *In re Checking Account Overdraft* for this proposition); *see also Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *4 (S.D.W. Va. May 23, 2013)(finding *Camden I* "mandate[s] use of the percentage of fund method"); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.2000) (finding *Camden I* "mandate[s] the exclusive use of the percentage approach in common fund cases"); and Alba Conte, *Attorney Fee Awards* § 2.7, at 91 n. 41 (citing *Camden I* and interpreting that "[t]he Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases.").

The second prong of the fee analysis—how the fee is to be calculated—is thus satisfied: under *Camden I* the Court must calculate Class Counsel's attorney's fees as a percentage of the $5,774,010.00 common fund they won for the Class.

**D.   Class Counsel's Request for 31% of the Fund is Reasonable Under the *Camden I* Benchmark and the *Johnson Factors*.**

After entitlement and calculation are established, the Court's task turns to what constitutes a reasonable fee amount under the circumstances, which is the third and final prong of the fee analysis. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).   *Camden I* again guides the analysis.

**1. The Eleventh Circuit Benchmark.**

Under *Camden I*, to determine reasonableness of a requested fee amount, a court identifies a reasonable "benchmark" percentage amount to be award from the common fund, then applies the *Johnson factors* to adjust the fee up or down. *See Suzuki Motor Corp.*, 2010 WL 1628362, 8 n. 15; *Camden I*, 946 F.2d 768, 775.   While there is no hard-and-fast rule identifying what percentage constitutes a "reasonable percentage," in *Camden I* the Eleventh Circuit found that an upper limit

---

[6] Nevertheless, Class Counsel has by declaration summarized the number of hours expended. Lehrman Decl. at ¶ 5.   One-third of the common fund is still the proper measurement. *See* 4 *Newberg on Class Actions*, § 14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

of 50% of the fund may be stated as a general rule and that the "majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* at 775-75. It directed district courts "to view this range as a 'benchmark' which 'may be adjusted in accordance with the individual circumstances of each case.'" *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (interpreting *Camden I*); *see also In re Sunbeam,* 176 F.Supp.2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

To this end, under *Camden I,* courts in this District regularly award fees based on a reasonable percentage of the recovery within the range identified by the Eleventh Circuit and other courts. *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1210 (S.D.Fla. 2006) (31.5% of fund)(collecting cases and following numerous scholarly materials discussing the common fund); *In re Checking Account Overdraft Litig.*, 830 F. Supp. at 1367 (awarding 30% of fund, citing numerous studies and experts including Geoffrey Miller who found "30% [wa]s consistent with the results of several studies that provide information about fee awards as percentages of the recovery in class action cases"); *see also Wolff v. Cash 4 Titles,* No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012), report and recommendation adopted, No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third."); *accord Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable.").

Here, the percentage of the fund Class Counsel seek—31%—falls squarely within the benchmark range for reasonable percentage-of-the-fund awards adopted and awarded in this District, the Eleventh Circuit, and other federal Circuits, demonstrating Class Counsel's request is on its face reasonable.

### 2. The *Johnson Factors.*

Under the circumstances of this case, the reasonableness of Class Counsel's request for 31% is likewise confirmed by the *Johnson* factors reiterated in *Camden I,* which militates strongly in favor of its approval by this Court.  The *Johnson Factors* adopted in *Camden I* are:

(1) the time and labor required;
(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.
*Camden I,* 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Courts in this District caution that these twelve factors are not exclusive. "Other pertinent factors are …whether there are any substantial objections by class members or other parties to the…fees requested by counsel…and the economics involved in prosecuting a class action." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). In other words, these factors are merely guidelines. The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)).

In line with the foregoing, Class Counsel submit that the following factors confirm that 31% of the common fund is reasonable, and consequently this Court should award Class Counsel's requested fee without hesitation:

### a.  Outstanding Result

*First,* as the Federal Judicial Center observes, "[t]he fund itself signifies success." Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, § II B.1.b, p. 67 (3d ed. 2015). Indeed, "[p]erhaps no better indicator of the quality of representation here exists than the result obtained." *See Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988) aff'd., 899 F. 2d 21 (11th Cir. 1990); *see also Camden I*, 946 F.2d at 774 ("[A] common fund is itself the measure of success"); and *Hensley*, 461 U.S. 424, 436 (finding a "critical factor is the degree of success obtained").

Class Counsel extensively and aggressively prosecuted and tried this case establishing a substantial monetary judgment of $5,774,010.00 for the Class. This sum incorporates a 100% recovery of aggregate damages, which is an outstanding result in any case, let alone a class action, which rarely goes to trial. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *6 (S.D.N.Y. June 27, 2012) (noting "consumer class trials are relatively rare"); 21 Am. Juris. Trials 625: *Preparation and Trial of Federal Class Actions* (2009) ("[f]ew class actions have actually been tried"). By any measure, winning a common fund judgment after a class action

trial represents an exceptional, extraordinary achievement. "These results are powerful support for the [requested] fee award." *Montoya v. PNC Bank, N.A.*, No. 1420474CIVGOODMAN, 2016 WL 1529902, at *16 (S.D. Fla. Apr. 13, 2016), appeal dismissed (July 11, 2016). "The result here is extraordinary, and perhaps best supports the justice of Class Counsel's requested fee award." *Wilson v. EverBank,* No. 14-CIV-22264, 2016 WL 457011, at *14 (S.D. Fla. Feb. 3, 2016).

### b.   Customary Awards in Other Cases

*Second*, the fee Class Counsel request falls well within the percentage customarily awarded in other class cases. Numerous decisions have recognized that a fee award approximating 30% of a common fund is well within the range of a customary fee award. *See In re Sunbeam,* 176 F. Supp. 2d at 1333-34. As another member of this Court observed, "federal district courts across the country have, in the class action…context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs.*, 454 F. Supp. 2d 1185, 1210 (awarding fees equaling 31⅓ %) (citing, *inter alia, In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass. Apr. 9, 2004) (33⅓ percent); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (35.1%)); *see also Wolff v. Cash 4 Titles*, No. 03–cv–22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions).

Under *Camden I*, since the 1990s, numerous other judges in this District and Circuit have award fee requests approximating 30% of the common fund. As Judge Cooke recently found, "common fund attorney fee awards of one-third [of the recovery] are 'consistent with the trend in this Circuit.'" *Kurt S. Soto v. The Gallup Organization, Inc*, No 0:13-cv-61747-CIV, ECF No. 95 (S.D. Fla. Nov. 15, 2015) (citing *Reyes, et al. v. AT&T Mobility Services, LLC,* No. 10-20837-CIV, ECF No. 196, at 6); *accord Diakos v. HSS Sys., LLC,* No. CV 14-61784-CIV, 2016 WL 3702698, at *7 (S.D. Fla. Feb. 5, 2016)( 31⅓ of fund); *Gevaerts v. TD Bank,* No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *11 (S.D. Fla. Nov. 5, 2015)(30% of fund); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *13 (S.D. Fla. Jan. 31, 2008) (approximating near 30%); *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-CV-3475WSD, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009) (observing "district courts in the Eleventh Circuit have awarded fee percentages within a range close to the 30%" range); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007)(30% of fund); *In re: Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5% of fund); *Sands Point Partners, L.P. v. Pediatrix*

*Med. Grp., Inc.*, No. 99-6181-CIV, 2002 WL 34343944, at *3 (S.D. Fla. May 3, 2002) (30% of fund); and *Waters,* 190 F.3d 1291 (affirming 31⅓ % of fund).[7]  That Class Counsels request 31% of the fund is consistent with percentages awarded in other cases further supports its reasonableness.

### c.   Risk, Difficulty, and Undesirability

*Third,* the risk, difficulty, and undesirability of the case support the reasonableness of the request.

### i.   *Inherent Risk.*

Class Counsel prosecuted this action entirely on a contingent fee basis. *See* **Exhibit A**, Declaration of Seth Lehrman ("Lehrman Decl.") at ¶ 7. Consequently, Class Counsel assumed a significant risk of nonpayment or underpayment, which should be reflected in the fee award. *See In re: Checking Account Overdraft Litig.*, 2014 WL 11370115, at *16. "Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment).  Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548). "Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively." *Wolff*, 2012 WL 5290155, at *5; *see also In re Quantum Health Resources Inc.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("[T]he court, in its discretion, should award a fee that is higher than strictly an hourly

---

[7] *In Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1211 n 21 (S.D. Fla. 2006), Judge Gold also cited *Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*, 2002 U.S. Dist. Lexis 25721 (S.D.Fla.2002) (30%); *In re CHS Elecs., Inc. Sec. Litig*., 99-8186-CIV-GOLD (S.D.Fla.2002)(30%); *Golden v. U.S. Diagnostics, Inc.*, 97-8010-CIV-GOLD (S.D.Fla.1998) (30%); *Ehrenreich v. Sensormatic Elecs. Corp.*, 95-6637-CIV-ZLOCH (S.D.Fla.1998) (30%); *Bakalor v. Integrated Communication Network, Inc*., 96-2021-CIV-KING (S.D.Fla.1997) (33.33%); *Silver v. Sensormatic*, 93-8619-CIV-MARCUS (S.D.Fla.1996) (33 ⅓%); *Tapken v. Brown,* 90-0691-CIV-MARCUS (S.D.Fla.1995) (33%); *In re Perfumania, Inc. Sec. Litig*., 92-1490-CIV-MARCUS (S.D.Fla.1993) (30%); and *In re Royce Labs, Inc. Sec. Litig.*, 92-0923-CIV-MOORE (S.D.Fla.1993) (30%).

fee for noncontingent services, *to compensate the lawyer for assuming this large contingent risk of nonpayment* when the lawyer has performed and expended monies for the benefit of the class ...") (quoting A. Conte, Attorney Fee Awards § 1.09) (emphasis added by court).

### ii.   *Difficulty and Undesirability*

Besides the inherent risk of taking this case on a contingent base, this case was particularly risky, downright difficult, and even outright "undesirable" for a host of other reasons. "Undesirable" is the context includes cases from which law firms shrink due to potential social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. *In re Sunbeam,* 176 F.Supp. 2d at 1336. Class Counsel are not a large firm, teaming with associates. Lehrman Decl. at ¶ 8.  They employ only one. *Id.* The prospect of taking on a controversial, high-profile defendant like Defendant (and its principals) would cause some firms to shy away from such a case. Yet, Class Counsel took on this representation even though Defendant Jupiter National and its principals were reputedly tenacious, unyielding, and resourceful. Lehrman Decl. at ¶ 8. This proved true over the course of the litigation, which culminated in a two-day trial—again, a rarity in the class action arena.

Furthermore, the underlying issue in this case was thorny.  This case was difficult and complicated because there was no case law Class Counsel found that paralleled the precise issues raised in the Membership documents at issue. Lehrman Decl. ¶ 15.[8]  In addition, the membership documents necessitated interpretation of multiple documents to discern when and under what circumstances a membership was considered terminated or recalled, and whether a member was to pay dues and have Club access while on the resignation list. *Id.* at ¶ 17.  The facts were similarly complicated because at the outset and through much of the case, it was unclear which Defendant––assignor (RBF) or assignee (Trump National)—bore responsibility for the alleged breach of membership documents.  Lehrman Decl. ¶ 16.  Also, RBF filed crossclaims against Trump National, injecting another layer of risk, complexity, and uncertainty (DE 52).

### iii.  *Marketplace for Contingent Fee Contracts*

Additionally, besides reviewing the contingent nature and difficulty of the representation, courts look to the private marketplace in discerning the reasonableness of a percentage fee. *See*

---

[8] Class Counsel did however find *Feldkamp v. Long Bay Partners, LLC,* 773 F. Supp. 2d 1273 (M.D. Fla. 2011), aff'd, 453 Fed. Appx. 929 (11th Cir. 2012), which is instructive as to the general legal relationship between a club and its members.

*Pinto*, 513 F. Supp. 2d 1334, 1340; *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir.1992) (finding the goal of the fee setting process it to "determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order") (citations omitted).

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. "Individual clients often recognize that they lack the expertise or time to monitor their attorneys' performance." *Id*. "Thus, they select a compensation formula—the contingent fee—that automatically aligns their attorneys' interest with their own." *Id.* The percentage of the common fund approach to attorneys' fees is intended in part to mimic the contingent fee marketplace.  As one sister court observed,

> The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same as that which justifies permitting contingency fee arrangements in general. The underlying premise is the existence of risk—the contingent risk of nonpayment…The higher payment due under a contingency fee reflects the fact that the lawyer will realize no return for his investment of time and office expenses in the cases he loses.

*In re Combustion, Inc.*, 968 F. Supp. 1116, 1132 (W.D.La.1997).

Therefore, under a market-based analysis, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying [and contracting] client." *Pinto*, 513 F. Supp. 2d at 1340 (quoting *In re Cont'l Illinois Sec. Litig.*, 962 F.2d at 572 and also citing *In re RJR Nabisco Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984, at 94,268 (S.D.N.Y.1973)). "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."  *Pinto*, 513 F. Supp. 2d at 1341; *see also Allapattah*, 454 F. Supp. 2d 1185, 1212 (citing empirical studies and experts observing 31⅓ % is the market rate for private contingency fee agreements in commercial cases).

Each named Plaintiff here negotiated and agreed with Class Counsel to a contingent fee of 31%,[9] which falls under the marketplace price for contingent representation.  This, combined with

---

[9] *See* Lehrman Decl. at ¶ 9.

the "undesirability," risk, and difficulty of the case stated above, again demonstrates the reasonableness of Class Counsel's request for 31% of the common fund.

### d.   Experience and Skill of Class Counsel

*Fourth,* Class Counsel have extensive experience in complex litigation, which supports the reasonableness of the requested fee award.  The standing and qualifications of Class Counsel are set forth in the attached declaration from Seth Lehrman and demonstrate that Class Counsel have been involved in several complex cases. *See* Lehrman Decl. at ¶ 4.

Further, in this case, "[g]iven the quality of defense counsel from [a] prominent…law firm, the Court [may] not [be] confident that attorneys of lesser aptitude could have achieved similar results." *See Walco*, 975 F. Supp. at 1472. 1. Russomanno & Borrello, P.A., are well known in this District, and its principals have well-earned reputations as outstanding, well-heeled, and exemplary litigators and trial lawyers. *See* Lehrman Decl. at ¶ 18.  This proved true over the course of the case.  They proved to be formidable advocates for Defendant, challenging Plaintiffs at each potential, watershed moment in the case, filing motions to dismiss and for summary judgment, fomenting motions to compel, rebutting class certification, and eventually taking the case to trial.

To litigate a case such as this to trial against the extremely able and diligent defense attorneys Defendant employed, required counsel highly trained in class action matters, trial practice, and legal drafting to surmount the thorny issues the case presented.  As demonstrated by the notable results they achieved, Class Counsel successfully prosecuted this matter against worthy advocates, and Class Counsel met the challenge presented by a resourceful defendant assiduously and skillfully.  That they were successful against this opposition further shows the reasonableness of their attorney's fee request calculated at 31% of the common fund.

### e.   Labor Involved

*Fifth***,** litigating and prosecuting the claims in this action not only required skill and experience, it also demanded considerable labor, further showing that Class Counsel's fee request is reasonable.

#### i.   *Case Investigation and Pleadings*

In 2013, Class Counsel began investigating the claims on which Plaintiffs ultimately prevailed three years and 265 docket entries later.

From 2013 to the filing of the first complaint on May 3, 2013, Class Counsel devoted dozens of hours of attorney time to investigate the facts and law underlying Plaintiffs' potential claims. *See* Lehrman Dec. at ¶¶ 5, 15.

In response to Defendants' first motion to dismiss (DE 19), Plaintiffs' filed an amended complaint (DE 23). Defendants then moved to dismiss the amended complaint, which the Parties fully briefed (DE 30-31, 34, 40-41). The Court later denied both motions (DE 50).

Plaintiffs later settled with RBF,[10] requiring a stipulation (DE 171-1), settlement notice to the Class (DE 171-2), and motions for preliminary (DE 171) and final approval (DE 184), all which Class Counsel worked on extensively. Lehrman Decl. at ¶ 20. The Court approved the settlement with RBF granting dismissal of RBF with prejudice in accordance with Plaintiffs' and RBF's stipulation of dismissal (DE 187 at 3). But the Court's dismissal of RBF did not dispose of Plaintiffs' and Class Members' claims against Defendant Jupiter National[11] and likewise did not resolve RBF's cross-claim against the Club (DE 52 and DE 59), which the Court severed from the Court's trial of Plaintiffs' action against the remaining Defendant, Trump National (DE 200).

After RBF's dismissal, Plaintiffs continued their case against the assignee Trump National. On August 15, 2015, Plaintiffs filed a second amended complaint for breach of contract, declaratory relief, and injunctive relief against Trump National as sole Defendant (DE 146). The declaratory and injunctive claims for relief were premised on the breach of contract claims (DE 216 at 11), arising from allegations that after Defendant acquired the Club it took actions that triggered the return of Plaintiffs' and Class Members' membership deposits within 30 days, and Defendant failed to return the deposits as required.

### ii. *Extensive Discovery*

Discovery throughout all stages of the case was both contentious and substantial and necessitated Plaintiffs' filing two motions to compel (DE 61-62), which the Parties fully briefed (DE 65-66). *See* Lehrman Decl. at ¶ 24. The Magistrate heard both of Plaintiffs' motions and granted them (in part) (DE 72-73).

---

[10] As used throughout this Motion, "RBF" refers to the original Defendant RBF, LLC d/b/a Ritz-Carlton Golf Club & Spa Jupiter.

[11] As used throughout this Motion, "Trump National" refers to remaining Defendant Jupiter Golf Club, LLC d/b/a Trump National Golf Club Jupiter.

Class Counsel drafted, issued, and studied the responses of multiple sets of discovery to Defendants, including sets of interrogatories and production requests to RBF and Trump National, and supplemental interrogatories to Trump National.  Lehrman Decl. at ¶ 25.  Class Counsel also assisted Plaintiffs with their responses to interrogatories and requests to produce.  *Id*.  Throughout discovery, Class Counsel reviewed more than 6,000 documents. *Id.* at ¶ 26.  Of these documents, 5,983 were uploaded into a review database, called *Nextpoint*. *Id* .  Class Counsel reviewed hundreds of additional documents that were not uploaded. *Id.* Class Counsel also deposed an RBF corporate representative, and Trump National's representatives, David Cohen, Eric Trump, and Donald Trump.  *Id.* at ¶ 27.  Class Counsel also defended several hours of depositions of each of the three named Plaintiffs. *Id*.

### iii. *Winning Class Certification*

After the pleadings settled and sufficient discovery occurred, on January 20, 2015, Plaintiffs filed a motion for class certification (DE 100), which both Defendants vigorously opposed (DE 110-111). Each Party incorporated numerous exhibits into their filings (DE 100, 110-11), and Defendants supplemented the record with numerous other filings in support of their oppositions (DE 112-14, 118). Plaintiffs rebutted Defendants' opposition via a reply filed on April 13, 2015, attaching still more exhibits (DE 120).

On May 13, 2015, the Court granted class certification and ordered notice be provided (DE 124).  Thereafter, in addition to the notice Class Counsel worked on regarding the settlement with RBF, Class Counsel drafted and moved for approval of class certification notice (DE 124), which both Defendants challenged (DE 126-27), and Class Counsel in turn rebutted in a reply (DE 130). *See* Lehrman Decl. at ¶ 29.  The Court granted Plaintiffs' Motion for notice approval (DE 131), and Class Counsel disseminated the notice to Class Members (Lehrman Decl.  ¶ 29), notifying Class Members (among other things) that Class Counsel may request fees and expenses deducted from monies awarded to the Class (DE 125-1 at 6-7 of 7).  Defendants petitioned to appeal the Court's class certification order under Rule 23(f), which the Eleventh Circuit denied. Lehrman Decl. at ¶ 29.

After further discovery and communications with Trump's counsel, Class Counsel uncovered the names of additional potential Class Members. Lehrman Decl. at ¶ 30.   Based on this information, Class Counsel drafted and issued yet another notice affording more Class Members notice and the opportunity to opt out (DE 181). Lehrman Decl. at ¶ 30.

#### iv. *Successfully Rebutting Summary Judgment*

After the Court granted class certification and Defendants' Rule 23(f) appeal was unsuccessful, both Defendants moved for summary judgment, supported by extensive statements of facts buttressed by lengthy legal memoranda (DE 139-42, 145, 159-61). Plaintiffs opposed summary judgment in like manner, filing their own statement of facts and memorandum (DE 177-178). In the interim, Plaintiffs settled with RBF (Lehrman Decl. at ¶ 31), thus only Trump National followed up with a reply (DE 182). Only its motion remained at issue.

On March 24, 2016, the Court held a hearing on Trump National's summary judgment motion. On July 25, 2016, the Court denied Trump National's motion (DE 216). On August 4, 2016, Trump National moved for reconsideration of the Court's summary judgment ruling and to decertify the Class (DE 224), which Plaintiffs opposed (DE 241). After Defendant filed a reply to Plaintiffs' opposition (DE 242), the Court denied Trump National's reconsideration and decertification motion (262).

#### v. *Prevailing at Trial and Winning Final Judgment*

Class Counsel then prepared for trial over a span of several months, reviewing discovery, excerpting depositions, poring over potential exhibits, and preparing witnesses. Lehrman Decl. at ¶ 33. As part of this preparation, Class Counsel presented the case to a mock jury to test its strengths and weaknesses. Lehrman Decl. at ¶ 33.

Also in preparation for trial, based on the Court's summary judgment ruling (DE 216), the Parties prepared a joint pretrial stipulation, which identified the issue of fact remaining to be litigated at trial, primarily "[w]hether Trump [had] recalled Plaintiffs' and Class Members' memberships" giving rise to their claim for deposit refunds (DE 227 ¶ 6). The stipulation further advised Defendant and the Court that Plaintiffs would seek attorney's fees exactly as sought in this current Motion, specifying that "[i]f Plaintiffs [were to] prevail at trial, then Plaintiffs w[ould] seek an award of attorney fees, costs and expenses as a percentage of common fund based on applicable 11th Circuit attorney-fee jurisprudence" (DE 227 ¶ 12).

Based on the pretrial stipulation and after lengthy trial preparation, Plaintiffs and Defendant tried Plaintiffs' claims over two-days, August 15-16, 2016. During trial, Class Counsel introduced the testimony of six witnesses (Trial Tr. Vol. I at 18, 40, 46, 140, 168; Trial Tr. Vol. II at 4) and approximately 55 exhibits. *See* Lehrman Decl. at ¶ 36. At the end of trial, the Court requested that each side submit proposed findings of fact and conclusions of law. Therefore, Class Counsel

prepared and filed 40 pages of proposed findings and conclusions on Plaintiffs' behalf, on October 13, 2016 (DE 261). *See* Lehrman Decl. at ¶ 37.

On February 1, 2017, the Court has now adopted many of the findings and legal conclusions Plaintiffs proposed (DE 263). Class Counsel's unwavering commitment and perseverance during this hard-fought litigation resulted in a judgment for a total amount of $5,774,010.00 for the Class.

*In sum*, Class Counsel submit that the foregoing factors—the labor required, the skill and experience of Class Counsel, the customary awards in other cases, the risk, difficulty, and undesirability of the case, and the outstanding results Class Counsel achieved—clearly confirm that 31% of the common fund is reasonable, and thus, this Court should award Class Counsel's requested fee.

### E.  Class Counsel are Entitled to Nontaxable Costs.

Class Counsel are likewise entitled to an award of nontaxable costs.

#### 1. Basis and Entitlement.

Besides attorney's fees, Federal Rule of Civil Procedure 23(h)(1) specifies that "the court may award reasonable attorney's fees *and nontaxable costs* that are authorized by law." (emphasis added).  In line with this provision, "[n]ontaxable costs are subjected to the same procedures in class suits as are fees." Newberg on Class Actions § 16:9 (5th ed.).   And similarly, like attorney's fee requests of those who win a common fund for a class, the class litigant it entitled to nontaxable costs from the common fund. *Id.* (observing "the class itself pays such expenses as they are deducted directly from their common fund recovery").

The rationale for awarding nontaxable costs from the common fund is the same as that justifying deducting attorney's fees from the common fund—"namely, that the class would be unjustly enriched if it received the bounty of lawyer's services without compensating the lawyer for those services." *Id.*   To this point, the Supreme Court held, "the historic power of equity…permit[s]…a party preserving or recovering a fund for the benefit of others in addition to himself, *to recover his costs…from the fund or property itself or directly from the other parties enjoying the benefit*." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975) (emphasis added); *see also Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166 (1939) ("[T]he foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a

19

particular situation."). Thus, based on the rationale and discussion Class Counsel provided above vis-à-vis Rule 23(h) and the common fund, Class Counsel are entitled to award of non-taxable costs.

**2. Reasonableness.**

Furthermore, like awards of attorney's fees, Rule 23(h)(1) requires judicial review and authorizes a court to approve the reimbursement of "reasonable" nontaxable costs. After entitlement is established, courts turn to what is reasonable, focusing primarily on three criteria:

*First*, the costs requested must be supported by adequate documentation.[12] Class Counsel meet this criterion: In the attached declaration from Class Counsel, attorney Seth Lehrman includes tables and accompanying receipts and invoices demonstrating with particularity the items Class Counsel seek as non-taxable costs.

*Second,* qualitatively and quantitatively the non-taxable costs should not be excessive or extravagant. *See, e. g, Hawthorne v. Umpqua Bank*, 2015 WL 1927342, *6 (N.D. Cal. 2015) (reducing reimbursement for travel expenses because, *inter alia*, "first-class airplane flights are not a reasonable expense or one that would normally be charged to plaintiff-clients in a consumer class action"); *Florida Keys Citizens Coalition, Inc. v. U.S. Army Corps of Engineers*, 386 F. Supp. 2d 1266, 1271 (S.D. Fla. 2005) (reducing costs request for copies that were duplicates made for the convenience of counsel). Class Counsel also meet this criterion. They seek no recovery of duplicative copy costs, first class travel, luxuries or mere counsel conveniences. *See* Lehrman Decl. at ¶ 6.

*Third*, allowable non-taxable costs should be those costs "incurred by the attorney which are typically charged to a client in the course of providing legal services." *See Smith v. Casey*, No. 12-23795-CIV, 2013 WL 12064518, at *8 (S.D. Fla. July 26, 2013), *report and recommendation adopted,* No. 1:12-CV-23795-UU, 2013 WL 12064520 (S.D. Fla. Dec. 19, 2013); *see also Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 744 (E.D. Mich. 2014) (noting that nontaxable costs are recoverable "as long as they are reasonable out-of-pocket expenses incurred

---

[12] *See Gonzalez v. Wells Fargo Bank, N.A.*, No. 1:13-CV-23281, 2015 WL 12978820, at *8 (S.D. Fla. Mar. 20, 2015), *report and recommendation adopted sub nom. GERARDO GONZALEZ & YAMEL GONZALEZ, Plaintiffs, v. WELLS FARGO BANK, N.A., a national banking association f/a/a WACHOVIA BANK, Defendant.*, No. 13-23281-CIV, 2015 WL 12978799 (S.D. Fla. Apr. 8, 2015).

by the attorney that are normally charged to a fee-paying client in the course of providing legal services"); and Newberg on Class Actions § 16:10 (5th ed.) (same).

"Decisions in the courts of this circuit have awarded [attorney] expense reimbursements liberally as appropriate to the specific litigation." *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1191 (11th Cir. 1983).   The scope of non-taxable costs awarded is therefore broad. *See McClelland v. HSBC Retail Servs., Inc.*, No. 208-CV-708-FTM-29DNF, 2011 WL 32423, at *3 (M.D. Fla. Jan. 5, 2011) (distinguishing narrow scope of taxable costs of the action under 28 U.S.C. § 1920 from nontaxable expenses or "litigation costs"); *Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-CIV, 2013 WL 12086769, at *4 (S.D. Fla. Nov. 20, 2013), report and recommendation adoptefd, No. 10-60170-CIV, 2014 WL 12479993 (S.D. Fla. Jan. 14, 2014) (awarding array of non-taxable costs based on Dkt. Entry 283-4); *see also* Newberg on Class Actions § 16:10 (5th ed.) (noting breadth of items considered "nontaxable" costs).

Typical nontaxable costs awarded have included deposition costs, mediator fees, on-line legal research, telephone charges, photocopying and document preparation, costs associated with a mock jury, postage and delivery, litigation and trial support, and travel and lodging expenses (including meals). *See E.E.O.C. v. W. Customer Mgmt. Grp., LLC,* No. 3:10CV378/MCR/CJK, 2015 WL 3750138, at *3 (N.D. Fla. June 15, 2015); *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-23159-CIV, 2014 WL 11804564, at *2 (S.D. Fla. Jan. 23, 2014); *Managed Care*, 2013 WL 12086769, at *4 (interpreting Dkt. Entry 283-4); *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014); *see also Waldo v. Consumers Energy Co*., 726 F.3d 802, 827 (6th Cir. 2013).

As stated in Mr. Lehrman's declaration, Class Counsel documents and requests costs falling within the foregoing categories.  *Ergo,* the non-taxable costs Class Counsel request are ones to which they are entitled under the common fund doctrine; *and* they are reasonable. Thus, the Court should award Class Counsel the non-taxable costs they request.

### F.  Named Plaintiffs are Entitled to Incentive Awards.

Finally, in addition to attorney's fees and nontaxable costs, Class Counsel request incentive awards (a/k/a "service awards" and "case contribution awards")[13] for the named Plaintiffs Norman Hirsch, Matthew Dwyer and Ralph Willard, for serving as class representatives.

---

[13] *See* Newberg on Class Actions § 17:3 (5th ed.) (noting the varying nomenclature).

### 1. Precedent.

In this District, "there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6; *see, e.g., Curry v. AvMed, Inc., No.* 10-CV-24513-JLK, 2014 WL 7801286, at *3 (S.D. Fla. Feb. 28, 2014) ($5,000 incentive award reasonable for each plaintiff "for their roles as Class Representatives…willingness and efforts with respect to taking on the risks of litigation and helping achieve the results" in the case); *Wilson v. EverBank,* No. 14-CIV-22264, 2016 WL 457011, at *15 (S.D. Fla. Feb. 3, 2016) ($5,000.00 to each to named plaintiff); *Leslie v. Conseco Life Ins. Co*., No. 9:11-CV-81035-KAM, 2014 WL 12479931, at *2 (S.D. Fla. July 25, 2014)($5000 awarded, granting ECF. No 64); *Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *8 (S.D. Fla. Oct. 7, 2013) ($3,500 award for class representative); and *Merkle v. Vista Healthplan, Inc.*, No. 10-80347-CIV, 2010 WL 11426151, at *5 (S.D. Fla. Aug. 17, 2010) ($7,500 and $85,000 incentive awards granted).

### 2. The Source.

"In common fund cases, the presence of a fund under the court's supervision serves as both the source of the award and, in a sense, as the source of authority for an award."  Newberg on Class Actions §§ 17:4-17:5 (5th ed.) (also commenting, "[c]ourts have generally approved incentive awards that are withdrawn from the common fund at the conclusion of the common fund case"); *see e.g., Diakos*, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 5, 2016) ("awarding  $10,000 service award to plaintiff…to be paid from the class common fund"); *Allapattah Servs., Inc.* 454 F. Supp. 2d 1185, 1239 (incentive award deducted from common fund); *Radcliffe v. Experian Information Solutions Inc.,* 715 F.3d 1157, 1163 (9th Cir. 2013) ("the [incentive] awards are often taken from the class's recovery"); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 250–51 (S.D.Ohio 1991) (approving $50,000 to each of the six class representatives from a common fund); *In re Dun & Bradstreet Credit Serv. Customer Litig*., 130 F.R.D. 366, 373–74 (S.D.Ohio 1990) (approving incentive awards in the amounts of $35,000 and $55,000 to five class representatives from a common fund); and *In re Catfish Antitrust Litig*., 939 F.Supp. 493, 503–504 (N.D.Miss.1996) (approving incentive awards from a common fund because of the sacrifices of the named plaintiffs in pursuit of litigation on behalf of the class).

### 3. The Analysis.

Some factors courts consider in deciding incentive awards include: (1) the degree and manner of involvement of named plaintiffs in the case;[14]  (2) the risks they incurred during the class action litigation and trial;[15] (3) incentive awards granted in similar cases;[16] and (4) the benefits named plaintiffs achieved for the class[17] and incentivizing others to do the same.[18]

Each of these factors is present here and supports a $2000 incentive award to each named Plaintiff:

### a. Extensive Involvement

As confirmed in their declarations filed with this Motion, each Plaintiff's involvement in the case has been extensive. Each named Plaintiff produced documents, reviewed court filings, responded to discovery requests, sat for depositions, attended court hearings, including a two-day trial, and consulted with class counsel about the case on numerous occasions.[19]  This participation shows they were involved in this case extensively, which in turn justifies an incentive award.[20]

---

[14] *See Allapattah*, 454 F. Supp. 2d at 1218; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

[15] *Allapattah*, 454 F. Supp. 2d at 1218.

[16] *In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007).

[17] *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *2, *18 (S.D. Fla. Apr. 13, 2016); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award.").

[18] *Gevaerts*, 2015 WL 6751061, at *9.

[19] *See* Declaration of Norman Hirsch, Declaration of Matthew Dwyer and Declaration of Ralph Willard, attached as exhibits to the Lehrman Declaration attached hereto as **Exhibit A.**

[20] *See, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d. 766, 787 (N.D. Ohio 2010) (approving incentive awards of $5,000 to plaintiffs who substantially contributed to litigation); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 258–59 (D.N.J. 2005) (approving $10,000 incentive awards to plaintiffs who worked closely with counsel and $3,000 incentive award to plaintiff who produced documents, appeared for deposition, and attended the fairness hearing, and $1,000 incentive award to plaintiff who only played a minor role); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving higher incentive awards to plaintiffs who produced personal records, appeared for lengthy depositions, and attended hearings); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357–58 (N.D. Ga. 1993) (approving incentive awards of $5,000 to plaintiffs who appeared for deposition and $2,500 to plaintiffs who produced documents in discovery).

23

### b.  Risk

Moreover, akin to Class Counsel, each Plaintiff bore significant risk that his investment of time in the case would be for naught.  Each entered a contingent fee agreement in which each agreed to advance costs up to a certain amount,[21] while (as noted above) the underlying issues in the case were thorny.

Also, serving as a named plaintiff in a class action lawsuit against a controversial, high-profile, and highly resourceful figure like Defendant (and its principals), would likely cause many individuals pause. Under these circumstances, there is a palpable risk of personal liability, financial loss, retaliation, and of unwanted notoriety.  Throughout the three years of the case, each has endured media attention, and the issues in the case have drawn public attention.  Since Plaintiffs started this case, the issues in the case and each named Plaintiff has received notoriety in the press, and indeed one or more has been interviewed both before and after trial.[22]

Each Plaintiff voluntarily commenced and continued with the case despite the foregoing risks. Doing so supports an incentive award. *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (finding when "a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (deciding incentive award and considering that plaintiff entered into a contingent fee arrangement with Class Counsel which obligated them to pay Class Counsel for expenses); *Allapattah Servs.*, 454 F. Supp. 2d 1185, 1222 (considering risk of costs, liability, and retaliation as factors in granting awards); *Wilson v. Airborne, Inc.*, No. EDCV 07–770–VAP (OPx), 2008 WL 3854963, *13 (C.D.Cal. Aug. 13, 2008) (finding that the media attention class representatives endured supported incentive awards).

### c. Current and Future Results

As noted above, the results of this case have been extraordinary.  By their participation, named Plaintiffs contributed to achieving a substantial monetary judgment of $5,774,010.00 for the Class, which represents a 100% recovery of aggregate damages, and is an outstanding result in

---

[21] Lehrman Dec. at ¶¶ 7, 9.

[22] *See* Lehrman Decl. at ¶ 14.

any case, let alone a class action, which rarely goes to trial.  An incentive award not only rewards this significant achievement, but also incentivizes other plaintiffs to take on difficult, but beneficial litigation, to achieve outstanding results in class actions.  *See Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 727 (S.D.W. Va. 2009) (noting incentive awards "are commonly granted to encourage socially beneficial litigation"); *Gevaerts*, 2015 WL 6751061, at *9 ("Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives."); *see also* Newberg on Class Actions § 17:3 (5th ed.) (noting that incentive awards "aim to compensate class representatives for their service to the class and simultaneously serve to incentivize them to perform this function"); *accord* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. REV. 1303, 1310 (2006) (arguing that "incentive awards serve multiple goals," including, compensating representative plaintiffs for costs and superior service to the class).

### d. Awards in Other Cases

In addition, based on the cases (including award amounts) cited above, the incentive awards named Plaintiffs seek—$2000 each—fall at the low end of awards granted in other cases.  This also true when the awards are measured as a percentage of the total recovery.  A study on incentive awards for class action plaintiffs also shows that amount requested is below average awards in other cases.  Analysis of incentive payments between 1993 and 2002 (374 cases) found that the median incentive payment then was $4,357, and the average was $15,992.  *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *10 (D. Me. Feb. 10, 2016) (citing Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1308 (2006)).  As a percentage, this same study found that the mean incentive award granted in consumer class actions is 08% of the total recovery, and the mean incentive fee granted in class actions overall is .161%. Eisenberg & Miller, *id.* at 1339.  In this case, $2000 is only roughly .035 % of $5,774,010, and as such, is below the mean incentive awards granted both in consumer litigation and class litigation overall.  The amount requested—$2000—falls below average incentive awards whether calculated in dollar amounts and as a percentage.  This fact also supports the reasonableness of the award.

*In sum,* the foregoing factors—the amount requested, the risk undertaken, awards in other cases, extensive case involvement, and the results named Plaintiffs achieved—clearly support an award of $2000 for each named Plaintiff.

## III.  CONCLUSION

Based on the long-standing precedent cited above in this Motion, Class Counsel meet all three prongs of the fee analysis.  After over three years of contentious litigation and Class Counsel's extensive work, this Court entered a judgment for Plaintiffs and the Class for a total fund of $5,774,010.00, accruing to all Class Members' benefit.

Under the procedures spelled out in Rule 23(h), the common fund doctrine adopted in this Circuit entitles them to a fee award from the $5,774,010 common fund they won for the Class, calculated as —31% ($1,789,943) of the $5,774,010 fund—which is well within the reasonable benchmark range identified in *Camden I* and its progeny. Considering their hard work and the results achieved in creating a fund for the Class and other factors reiterated in *Camden I,* Class Counsel's request for 31% of the class judgment is very reasonable.

Based on the rationale for awarding fees from a common fund created for a class, Class Counsel are entitled to the reasonable nontaxable costs they request.  And because the named Plaintiffs voluntarily represented the Class, took palpable risks, and actively participated for three years in the prosecution of the case yielding an extraordinary result, the Court is clearly justified in awarding them incentive awards of a modest sum of $2000 each.

Based on the foregoing facts and argument, the Court should therefore honor Class Counsel's request for attorney's fees, nontaxable costs, and incentive awards unequivocally.

## L.R. 7.1(a)(3) CERTIFICATION

In accordance with Local Rule 7.1(a)(3), I certify that on February 13 and 15, 2017, Class Counsel Seth M. Lehrman conferred with counsel for Jupiter Golf's counsel Herman J. Russomanno, III by email.  Mr. Russomanno indicated that Defendant Jupiter Golf Club could not agree to the requested relief at this time.

Dated:  February 16, 2017           Respectfully submitted,

*/s/ Mark S. Fistos*
Mark S. Fistos (Fla. Bar No. 909191)
E-mail: mark@pathtojustice.com
Seth M. Lehrman (Fla. Bar No. 132896)
E-mail: seth@pathtojustice.com
Bradley J. Edwards (Fla. Bar No. 542075)
Email: brad@pathtojustice.com
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
Telephone:  (954) 524-2820
Facsimile:  (954) 524-2822

*Plaintiffs' and Class Counsel*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court's CM/ECF system on February 16, 2017, and will be served on all counsel of record listed below through the ECF system.

*/s/ Mark S. Fistos*
Mark S. Fistos

**SERVICE LIST**
*Hirsch et al v. Jupiter Golf Club LLC et al*
**CASE NO. 13-80456-CIV-KAM**
**United States District Court in the Southern District of Florida, Palm Beach Division**

Herman J. Russomanno (Fla. Bar No. 240346)
E-mail: hrussomanno@russomanno.com
Robert J. Borrello (Fla. Bar No. 764485)
E-mail: rborrello@russomanno.com
Herman J. Russomanno III (Fla. Bar No. 21249)
E-mail: herman2@russomanno.com
RUSSOMANNO & BORRELLO, P.A.
Museum Tower, Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103
*Attorneys for Defendant Jupiter Golf Club, LLC*
*d/b/a Trump National Golf Club Jupiter*

Jerry R. Linscott (Fla. Bar No. 148009)
E-mail: jlinscott@bakerlaw.com
Julie Singer Brady (Fla. Bar No. 0389315)
E-mail: jsingerbrady@bakerlaw.com
Salomon Laguerre (Fla. Bar No. 092470)
E-mail: slaguerre@bakerlaw.com
P. Alexander Quimby (Fla. Bar No. 099954)
E-mail: aquimby@bakerlaw.com
BAKER & HOSTETLER LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Attorneys for Defendant RBF, LLC*
*d/b/a The Ritz-Carlton Golf Club & Spa Jupiter*